James G. Bohm, Esq. (SBN 132430)
*jbohm@bohmwildish.com*
Cecilia Preciado, Esq. (SBN 159309)
*cpreciado@bohmwildish.com*
Michael C. Gangi, Esq. (SBN 341613)
*mgangi@bohmwildish.com*
**BOHM WILDISH & MATSEN, LLP**
600 Anton Boulevard, Suite 640
Costa Mesa, CA 92626
Tel: (714) 384-6500 //Fax: (714) 384-6501
eMail: *eFile@BohmWildish.com*

Attorneys for Plaintiffs,
STEVEN PEARSON and MICHAEL MEIER

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# [SOUTHERN DIVISION]

| | |
|---|---|
| STEVEN PEARSON, an individual; and MICHAEL MEIER, an individual;<br><br>Plaintiffs,<br><br>v.<br><br>WILLS WING, INC., a Delaware Corporation; and WILLS WING HOLDING, INC., a Delaware Corporation;<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR DECLARATORY RELIEF**<br><br>**1)  Declaratory Judgment of Non-Infringement of Copyright**<br>**2)  Declaratory Judgment of Non-Infringement of Trademark**<br>**3)  Declaratory Judgment of Non-Misappropriation of Trade Secret**<br>**4)  Declaratory Judgment of No Unfair Competition / False Designation of Origin**<br><br>**DEMAND FOR JURY TRIAL** |

## COMPLAINT FOR DECLARATORY RELIEF

Plaintiffs STEVEN PEARSON ("Pearson") and MICHAEL MEIER ("Meier") (collectively "Plaintiffs"), by and through their undersigned counsel, allege against Defendants WILLS WING, INC., a Delaware Corporation ("WWI"); WILLS WING HOLDING, INC. ("WWHI") (collectively "Defendants") as follows:

BOHM WILDISH & MATSEN, LLP
600 Anton Blvd., Suite 640
Costa Mesa, CA 92626
(714) 384-6500
(714) 384-6501 (fax)

1

COMPLAINT FOR DECLARATORY RELIEF

## THE NATURE OF THE ACTION

1. This is an action for declaratory relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, the Copyright Act, 17 U.S.C. §§ 101 et seq., and the Lanham Act, 15 U.S.C. §§ 1051 et seq. An actual, substantial, and continuing justiciable controversy exists between Plaintiffs and Defendants concerning whether Plaintiffs' website, databases, services, use of logos, or works infringe any copyright or trademark rights asserted by Defendants.

2. Defendants have accused Plaintiffs of infringing Defendants' claimed ownership of intellectual property, including copyrights, trademarks, patents, and trade secrets, and have threatened to enforce those claimed rights against Plaintiffs. Plaintiffs deny that they have infringed upon any of Defendants' enforceable rights and bring this action to obtain a judicial declaration of their rights and to resolve the controversy created by Defendants' allegations and threats.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338(a), and 2201–2202, because this action arises under the Copyright Act of 1976, 17 U.S.C. §§ 101 et seq., and the Lanham Act, 15 U.S.C. §§ 1051 et seq. This Court has supplemental jurisdiction over any related state-law claims pursuant to 28 U.S.C. § 1367(a).

4. An actual case or controversy exists between the parties within the meaning of Article III of the United States Constitution and 28 U.S.C. § 2201, as more fully alleged below.

5. This Court has personal jurisdiction over Defendants because Plaintiffs' and Defendants' actions that give rise to this action were committed within this district, Defendants have regularly conducted and transacted business in this judicial district, and Defendants have purposefully directed their activities at this district. Defendants have also subjected themselves to this court's jurisdiction by directing their infringement allegations and threats at Plaintiffs in this district.

BOHM WILDISH & MATSEN, LLP
600 Anton Blvd., Suite 640
Costa Mesa, CA 92626
(714) 384-6500
(714) 384-6501 (fax)

2

COMPLAINT FOR DECLARATORY RELIEF

6. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and (c) because a substantial part of the events or omissions giving rise to the claims occurred in this district, and because Defendants are subject to personal jurisdiction in this district.

## INTRADISTRICT ASSIGNMENT

7. Pursuant to Local Rule 83-1.1 and General Order 24-04 of this Court, this action is properly assigned to the Southern Division because a substantial part of the events and transactions giving rise to the claims occurred in this district, and Plaintiffs currently reside in Orange County. In addition, the original trademark holder Sport Kites, Inc., dba Wills Wing, Inc., resided in Orange County at the time of all relevant events.

## THE PARTIES

8. Plaintiff Steven Pearson ("Pearson") is an individual residing in Orange County, California, and was the President and a Director of Sport Kites, Inc., dba Wills Wing, Inc. ("SKI") at the time of its dissolution.

9. Plaintiff Michael Meier ("Meier") is an individual residing in Orange County, California, and was the Secretary, Treasurer, and a Director of SKI at the time of its dissolution.

10. Defendant Wills Wing, Inc. ("WWI"), is a Delaware Corporation that participated in a physical asset sale with SKI on November 30, 2021.

11. Defendant Wills Wing Holding, Inc. ("WWHI"), is a Delaware Corporation claiming to be the owner of all Wills Wing intellectual property.

## FACTUAL BACKGROUND

12. On February 7, 1973, Sport Kites, Inc., dba Wills Wing, Inc. ("SKI"), a California corporation, was founded. The original founders of SKI included Robert V. Wills, Chris Wills, Bob Wills, and Eric Wills.

13. Around 1973, SKI started using a logo that featured a "WW" stylized to appear like two seagulls (the "Seagull Mark"). SKI used the Seagull Mark in both

BOHM WILDISH & MATSEN, LLP
600 Anton Blvd., Suite 640
Costa Mesa, CA 92626
(714) 384-6500
(714) 384-6501 (fax)

COMPLAINT FOR DECLARATORY RELIEF

internal documents and in commerce on hang glider products and advertisements.

14. In around April 1976, Plaintiff Meier began to work for SKI in purchasing and production management.

15. On May 18, 1976, SKI registered the fictitious name "Wills Wing, Inc." A true and correct copy of SKI's fictitious name registration is attached hereto as **Exhibit A**. Thereafter, SKI used the name "Wills Wing, Inc." in commerce both on internal documents and with its customers nationwide, and SKI's brand and products became associated with the "Wills Wing, Inc." name. Around this time, SKI began using the Seagull Mark in conjunction with the "Wills Wing Inc." trade name (*see* **Ex. B**).

16. In around 1978, Plaintiff Pearson began work for SKI in management and product design.

17. On December 1, 1979, Plaintiffs Meier and Pearson each became shareholders of SKI.

18. From around 1981, SKI started using another logo with the words "Wills Wing" in stacked, block letters with stylized "Ws" (the "Stacked Mark") (*see* **Ex. C**).

19. In or around late 1982 and early 1983, Plaintiff Pearson had been drafting and developing a new Wills Wing logo on his own initiative. In around early 1983, Plaintiff Pearson finished his new inline logo design featuring the stylized words "Wills Wing", slanted lettering, and wavy "Ws" beginning each word (the "Inline Mark") (**Ex. D**). Pearson drafted the Inline Mark as a new expression of the "Wills Wing" brand of his own volition, separate from the Seagull Mark and the Stacked Mark. Pearson initially drafted the Inline Mark as hand artwork.

20. In around March 1983, SKI began using Pearson's Inline Mark on company stationery as well as in commerce and advertisements (*see* **Ex. E** as an example of early use).

21. While shareholders of SKI, Plaintiff Meier and Pearson each drafted and authored hang gliding documents, photographs, illustrations, technical drawings,

BOHM WILDISH & MATSEN, LLP
600 Anton Blvd., Suite 640
Costa Mesa, CA 92626
(714) 384-6500
(714) 384-6501 (fax)

4
COMPLAINT FOR DECLARATORY RELIEF

product specifications, engineering data, owner's manuals, technical bulletins, newsletters, and marketing materials related to hang gliding of their own volition and on their own initiative separate from their duties to SKI and were not created as works-for-hire ("Plaintiffs' Other Works").

22. Between 1990 and 1992, Pearson re-rendered his Inline Mark in digital AutoCAD format. Soon thereafter, SKI began using the digital version of the Inline Mark on company communications, branding, and merchandise.

23. Around September 1996, SKI created the company website domain "willswing.com." Soon thereafter, SKI began using the Inline Mark on the website domain "willswing.com" (*see* **Ex. F**).

24. On or around July 2021, Defendant Wills Wing, Inc. ("WWI"), a Delaware corporation, was founded. WWI's founders included Filippo Oppici, Jessica Jean Koerner, Rudolfo "Rudy" Gotés Navarro, Leonides Enrique Guadarrama Gomez, Chris Wills, and Steve Pearson.

25. On or around 2021, Wills Wing Mexico S.A. de C.V., a Mexican operating entity (Sociedad Anónima de Capital Variable) ("Wills Wing Mexico"), was founded.

26. On or around that time, SKI began negotiating the sale of several physical assets to WWI.

27. In September 2021, SKI agreed to sell physical hang gliding assets to WWI for a total sale amount of $103,358.15. This asset sale included, in total: $9,900.00 in tools, fixtures, and sewing machines; $17,007.00 in sailcloth; $40,115.00 in aluminum tubing and extrusion; $80,801.00 in fasteners, fittings, and components; $167.50 for a 1988 GMC Pickup Truck; and $6,472.13 in parachutes, for a total of $154,462.63, minus a $51,104.48 discount on the Class IV and V inventory ("SKI Asset Sale") (*see* **Ex. G**).

28. An asset acquisition statement (Form 8594) for the same was jointly drafted by SKI and WWI in the amount of $103,358.15. A true and correct copy of

Bohm Wildish & Matsen, LLP
600 Anton Blvd., Suite 640
Costa Mesa, CA 92626
(714) 384-6500
(714) 384-6501 (fax)

COMPLAINT FOR DECLARATORY RELIEF

the asset acquisition statement is attached as **Exhibit H**. The asset acquisition statement noted that only "Class IV" assets (inventory, including sailcloth, aluminum tubing and extrusion, fasteners, fittings, and components) and "Class V" assets (the tools, fixtures, sewing machines, GMC Truck, and parachutes) were being sold as part of the SKI Asset Sale. On November 30, 2021, the SKI Asset Sale was finalized. Both SKI and WWI each filed identical Form 8594s, each attesting that $0 in "Class VI" assets (intangibles) and $0 in "Class VII" assets (goodwill) were being transferred as part of the sale.

29.    No intellectual property assets, rights, or ownership was included as part of the SKI Asset Sale. The asset acquisition statement explicitly did not include the sale of any Class VI assets (intangibles or intellectual property) or Class VII assets (goodwill) as part of the SKI Asset Sale. The entirety of the asset sale amount ($103,358.15) was accounted for in the SKI Asset Sale's sold physical inventory.

30.    SKI never agreed to sell or transfer the ownership of any of SKI's, or any of SKI's shareholders', trade secrets, designs, technical documentation or information, manuals, CAD/engineering files, copyrights, domain names, trademarks, trade dress, or goodwill (collectively "Wills Wing IP") to WWI, WWHI, or any other entity.

31.    Upon information and belief, soon thereafter, WWI transferred the physical assets purchased in the SKI Asset Sale to Wills Wing Mexico.

32.    At or around the time of the sale, SKI and Pearson agreed to grant WWI and Wills Wing Mexico an informal, undocumented, limited license to use the "Wills Wing, Inc." trade name and the Inline Mark in commerce. Soon thereafter, Wills Wing Mexico began production of hang gliders and accessories in Mexico similar to those produced by SKI. Upon information and belief, Wills Wing Mexico utilized SKI's trade name and Pearson's Inline Mark in advertising and upon their products after the sale.

33.    Around January 2022, Plaintiff Pearson divested his entire interest in WWI and resigned as officer and director of WWI.

BOHM WILDISH & MATSEN, LLP
600 Anton Blvd., Suite 640
Costa Mesa, CA 92626
(714) 384-6500
(714) 384-6501 (fax)

6

COMPLAINT FOR DECLARATORY RELIEF

34. Between 2021 and 2024, SKI operated in a scaled-back state, continuing to utilize the "Wills Wing, Inc." trade name, Pearson's Inline Mark, and the Wills Wing IP through provision of hang gliding information to previous customers and the greater hang gliding community.

35. On September 24, 2024, SKI's dissolution was filed and accepted, dated effective November 15, 2024. SKI was dissolved and its remaining physical and intangible assets, including all intellectual property owned by SKI, were distributed to the shareholders according to their ownership percentage. This included, but was not limited to, SKI's copyright ownership rights to all SKI designs, documents, photographs, illustrations, technical drawings, product specifications, engineering data, owner's manuals, technical documentation and bulletins, newsletters, marketing materials, CAD/engineering files, and any other copyrights authored and published by SKI.

36. The distribution to the shareholders according to their ownership percentage included SKI's trademark ownership in the "Wills Wing" trade name, the Seagull Mark, the Stacked Mark, SKI's trade use of Pearson's Inline Mark, and several product names.

37. The distribution to the shareholders according to their ownership percentage also included SKI's trade secret ownership included in any SKI designs or technical specifications (if any).

38. At the time of dissolution, SKI's shareholders included Chris Wills, Plaintiff Meier, Plaintiff Pearson, Linda Meier, and Patricia Kells.

39. Since the dissolution of SKI, Plaintiffs have been jointly engaged in providing educational and safety-related information to previous SKI customers and the hang gliding community as a whole, both through the operation and maintenance of website domain "willswing.com" (previously maintained by SKI) and providing online access to SKI's, Meier's, and Pearson's works of authorship related to hang gliders and SKI, hang glider and part designs, and hang glider safety and maintenance

BOHM WILDISH & MATSEN, LLP
600 Anton Blvd., Suite 640
Costa Mesa, CA 92626
(714) 384-6500
(714) 384-6501 (fax)

7

COMPLAINT FOR DECLARATORY RELIEF

documentation through the publicly available file-share domain "github.com" ("GitHub").

40.   Plaintiffs have been in continuous ownership and use of the copyrights and trademarks previously held by SKI, as well as Pearson's Inline Mark, on the "willswing.com" domain since SKI's dissolution.

41.   Since Pearson's authorship and creation of the Inline Mark in around 1983, Pearson has not sold or transferred any of his copyright ownership in the Inline Mark to SKI or any other person or entity.

42.   While SKI used Pearson's Inline Mark in commerce until its dissolution in 2024, SKI's corporate minutes from the period of the mark's creation and adoption (1975–1984) contain no board resolution adopting the Inline Mark as SKI's company logo or as SKI's official brand mark. Plaintiff Pearson independently created the Inline Mark, and did so without copying, using, or relying upon any protectable element of SKI's previous marks or logos. Plaintiff Pearson created the Inline Mark prior to WWI and WWHI's founding and wholly independent of any intellectual property rights they allege to possess.

43.   While SKI used Plaintiffs' Other Works until its dissolution in 2024, Meier and Pearson each remained the respective copyright owner of each of the Plaintiffs' Other Works they authored, and Meier and Pearson never sold or transferred any of their copyright interests in Plaintiffs' Other Works to SKI or any other entity.

44.   Around April 2024, Plaintiff Pearson was introduced to Alistair Jeffery ("Jeffery") through WWI founder Rudolfo "Rudy" Gotés Navarro via email. Mr. Jeffery expressed interest in investing in WWI and proposed purchasing the Wills Wing IP from Plaintiff Pearson (*see* **Ex. I**).

45.   From April 2024 through January 2025, Plaintiffs and Wills Wing Mexico discussed a potential sale of Plaintiffs' ownership of the Wills Wing IP to Wills Wing Mexico. As part of these negotiations, Plaintiffs explicitly noted that the

BOHM WILDISH & MATSEN, LLP
600 Anton Blvd., Suite 640
Costa Mesa, CA 92626
(714) 384-6500
(714) 384-6501 (fax)

8

COMPLAINT FOR DECLARATORY RELIEF

"willswing.com" domain and Plaintiffs' associated email addresses would not be included as part of any agreed-upon sale.

46.    On January 21, 2025, as part of the potential sale negotiations, Plaintiff Pearson sent Mr. Jeffery an email requesting that any sale of the Wills Wing IP first be independently evaluated before any sale was to take place (**Ex. J**).

47.    On February 2, 2025, Mr. Jeffery acknowledged that the informal license SKI granted to WWI to use the Wills Wing IP was undocumented and requested Plaintiffs take down the "willswing.com" domain. Plaintiff Pearson responded and again noted that the "willswing.com" domain was not available for sale. (*see* **Ex. K**).

48.    On February 4, 2025, in response to Mr. Jeffery's concerns, previous SKI shareholder of Wills Wing Mexico Chris Wills stated, "Keeping the legacy stuff under Steve's control gives comfort in maintaining the history of what we have accomplished in the past, so any small confusion is not a significant concern." (**Ex. K**).

49.    On or around February 2025, the "willswing.org" domain was created. Upon information and belief, Wills Wing Mexico is the operator of the "willswing.org" domain. The "willswing.org" domain asserts to the public that "in 2021, [SKI's] manufacturing was transferred to Valle de Bravo in Mexico, home to one of the world's most famous flying sites, and management was passed to well known competition pilot, Rudy Gotés." (**Ex. L**).

50.    In around April 2025, Defendant Wills Wing Holding, Inc. ("WWHI"), was formed in Delaware. Upon information and belief, Defendant WWHI has some successor-in-interest relationship with WWI and/or Wills Wing Mexico. Upon information and belief, both Mr. Jeffery and previous SKI shareholder Chris Wills are involved with WWHI in some capacity.

51.    On May 8, 15, and 20, 2025, Abner Palma of Wills Wing Mexico requested Plaintiff Pearson to add additional Wills Wing IP documents (hang gliding designs and specifications) to the GitHub public repository, and Plaintiff Pearson did

BOHM WILDISH & MATSEN, LLP
600 Anton Blvd., Suite 640
Costa Mesa, CA 92626
(714) 384-6500
(714) 384-6501 (fax)

9

COMPLAINT FOR DECLARATORY RELIEF

so upon each request (*see* **Ex. M**).

52.    On around February 9, 2025, and again on May 25, 2025, WWHI principal Alistair Jeffery edited SKI's Wikipedia page, asserting to the public that SKI's homepage link was changed from willswing.com to willswing.org' that WWHI was a successor in interest to SKI; that the headquarters had changed from Orange County, California, to Houston, Texas; that "Sport Kites, Inc." was a predecessor to "Wills Wing, Inc."; that "Wills Wing, Inc." was a predecessor to "Wills Wing Holding, Inc." Mr. Jeffery also modified the list of "Key People," removing Plaintiff Pearson and adding himself (Alistair Jeffery) to the list (*see* **Ex. N**).

53.    On April 23, 2026, WWHI filed for registration of two trademarks with the United States Patent and Trademark Office ("USPTO"): the first being a wordmark for "WILLS WING", serial number 99782198,; and the second for the words "Wills Wing" in a stylized format identical to Pearson's Inline Mark, serial number 99783048, both filed in class 012 "Gliders and structural parts therefor." Both of WWHI's trademark applications are currently pending assignment and awaiting examination. WWHI's trademark applications assert that its first use of the "Wills Wing" wordmark and Pearson's Inline Mark in commerce was December 31, 2021. A true and correct copy of WWHI's trademark filings is attached hereto as **Exhibit O**.

54.    On April 30, 2026, Defendant WWHI sent a cease-and-desist letter and takedown notice to Plaintiffs, asserting, "[w]e believe [WWHI] to be the lawful owner of all intellectual property associated with the Wills Wing business, including without limitation its designs, technical documentation, manuals, CAD and engineering files, trade secrets, copyrights, the willswing.com domain name, trademarks, trade dress, and related goodwill." A true and correct copy of the letter is attached hereto as **Exhibit P** and incorporated by reference.

55.    WWHI has provided no documentation to date supporting any ownership rights to any intellectual property associated with the Wills Wing name, mark, and/or

BOHM WILDISH & MATSEN, LLP
600 Anton Blvd., Suite 640
Costa Mesa, CA 92626
(714) 384-6500
(714) 384-6501 (fax)

COMPLAINT FOR DECLARATORY RELIEF

business, including without limitation SKI's trade secrets (the "Asserted Trade Secrets"), designs, technical documentation, manuals, CAD/engineering files, and copyrights (the "Asserted Copyrights"), the willswing.com domain name, trademarks, trade dress, and related goodwill (the "Asserted Marks") (collectively "Wills Wing IP").

56. WWHI further asserted that Plaintiffs' assertion of ownership of the Wills Wing IP, control and management of the domain "willswing.com," or publications through GitHub creates a "likelihood of confusion and dilution under the Lanham Act, copyright infringement, misappropriation of trade secrets, and equitable claims barring your current assertions and activities." WWHI demanded that Plaintiff remove the GitHub posting and turn over the ownership and administrator rights of the "willswing.com" domain to WWHI (**Ex. P**).

57. WWHI's assertions of confusion were made in spite of Chris Wills' February 4, 2025 statement to the contrary, that "I believe any customer who wants to fly a WillsWing glider will be able to figure out how to get to WillsWing.org, so access will not be an issue. Anybody who wants to buy a glider can't do so on the legacy site. They will easily figure it out. Keeping the legacy stuff under Steve's control gives comfort in maintaining the history of what we have accomplished in the past, so any small confusion is not a significant concern" (**Ex. K**).

58. Upon information and belief, the Facebook page "facebook.com/willswing.org" ("WWHI's Facebook") is managed and/or contributed to by WWI and/or WWHI.

59. On May 5, 2026, WWHI's Facebook posted that Plaintiffs' intellectual property notices on "willswing.com" and their provision of legacy hang glider design, parts, maintenance, and safety documentation on the GitHub, "creates, in our opinion, a safety and integrity risk for the sport." WWHI further asserted, "[i]t is not feasible to keep funding and operating normally while something as fundamental as the underlying IP position of our business is publicly challenged." (**Ex. Q**).

BOHM WILDISH & MATSEN, LLP
600 Anton Blvd., Suite 640
Costa Mesa, CA 92626
(714) 384-6500
(714) 384-6501 (fax)

11

COMPLAINT FOR DECLARATORY RELIEF

60. On May 7 and 15, 2026, Plaintiffs responded to WWHI's April 30 cease-and-desist letter, establishing Plaintiffs' ownership and right to exercise their intellectual property rights. Plaintiffs requested several times that WWHI provide any facts or documentation supporting their ownership of the Asserted Copyrights, Asserted Marks, or Asserted Trade Secrets, and Defendants have failed to do so to date.

61. On May 11, 2026, Plaintiffs temporarily and voluntarily suspended the GitHub repository in good faith, expressly reserving all rights and claims.

62. Plaintiffs deny that their assertion of ownership of the Wills Wing IP, control and management of the domain "willswing.com," or publications through GitHub infringes upon any enforceable copyright, trademark, or trade secret rights of Defendant. Plaintiffs deny that Defendants have any enforceable ownership of the Asserted Copyrights, Asserted Marks, or Asserted Trade Secrets to the extent asserted against Plaintiffs. Plaintiffs contend that they are entitled to engage in the conduct that Defendants have challenged.

63. As a result of Defendants' allegations and threats, a real, substantial, and immediate controversy of sufficient immediacy and reality exists between Plaintiffs and Defendants warranting the issuance of a declaratory judgment. Absent such a declaration, Plaintiffs face continuing uncertainty and the threat of litigation regarding its rights to conduct their business and use the Wills Wing IP, the domain "willswing.com," and make publications through GitHub.

## FIRST CAUSE OF ACTION

Declaratory Judgment of Non-Infringement of Copyright

(28 U.S.C. §§ 2201–2202; 17 U.S.C. §§ 101, 501, et seq.)

64. Plaintiffs reallege and incorporate by reference the allegations contained in foregoing paragraphs, 1-52, as though fully set forth herein.

65. An actual, justiciable controversy of sufficient immediacy and reality exists between Plaintiffs and Defendants regarding copyright ownership and

BOHM WILDISH & MATSEN, LLP
600 Anton Blvd., Suite 640
Costa Mesa, CA 92626
(714) 384-6500
(714) 384-6501 (fax)

12

COMPLAINT FOR DECLARATORY RELIEF

infringement. Defendants have asserted in their April 30, 2026 cease-and-desist letter that Plaintiffs' use and publication of certain works on willswing.com and GitHub constitutes copyright infringement of the "Asserted Copyrights."

66. Plaintiffs are the owners or co-owners of valid copyrights in the works they authored, including but not limited to Pearson's Inline Mark (created in or around early 1983), Plaintiffs' Other Works (hang gliding documents, photographs, illustrations, technical drawings, product specifications, engineering data, owner's manuals, technical bulletins, newsletters, and marketing materials), and any copyrights distributed to them upon SKI's dissolution on November 15, 2024.

67. Plaintiffs did not assign, transfer, or sell any copyright ownership in the Inline Mark or Plaintiffs' Other Works to SKI, WWI, WWHI, or any other entity.

68. Even as to any works that may have been owned by SKI, such copyrights were lawfully distributed to the shareholders (including Plaintiffs) upon SKI's dissolution and are not subject to any transfer under the November 30, 2021 asset sale.

69. Plaintiffs' continued use, publication, and distribution of their own copyrighted works and SKI's former copyrights (to which they are now successors-in-interest) on willswing.com and GitHub does not infringe any enforceable copyright owned by Defendants.

70. Plaintiffs are entitled to a declaratory judgment that:

    a. Plaintiffs own the copyrights in the Inline Mark and Plaintiffs' Other Works;

    b. Defendants have no ownership interest in the Inline Mark or Plaintiffs' Other Works;

    c. Plaintiffs' use and publication of the foregoing works does not infringe any copyright owned or claimed by Defendants; and

    d. Defendants' threats of copyright infringement are without merit.

///

///

BOHM WILDISH & MATSEN, LLP
600 Anton Blvd., Suite 640
Costa Mesa, CA 92626
(714) 384-6500
(714) 384-6501 (fax)

13

COMPLAINT FOR DECLARATORY RELIEF

## SECOND CAUSE OF ACTION

Declaratory Judgment of Non-Infringement of Trademark

(28 U.S.C. §§ 2201–2202; 15 U.S.C. §§ 1051, 1114, et seq. (Lanham Act))

71. Plaintiffs reallege and incorporate by reference the allegations contained in foregoing paragraphs, 1-59, as though fully set forth herein.

72. An actual, justiciable controversy of sufficient immediacy and reality exists between Plaintiffs and Defendants regarding trademark ownership, priority, and infringement. Defendants have asserted trademark rights in the "Wills Wing" name and Pearson's Inline Mark and have threatened Lanham Act claims based on Plaintiffs' continued use of those marks.

73. Plaintiffs (and their predecessor SKI) are the senior users of the common-law trademarks at issue, including the "Wills Wing" trade name (in use since at least 1976), the Seagull Mark, the Stacked Mark, and Pearson's Inline Mark (created and first used in commerce in 1983).

74. The November 30, 2021, asset sale between SKI and WWI expressly excluded all intellectual property, Class VI intangibles, and Class VII goodwill. No trademarks were sold or assigned to WWI, WWHI, Wills Wing Mexico, or any other entity.

75. Any limited, informal license granted to WWI/Wills Wing Mexico was narrow and did not transfer ownership.

76. Upon information and belief, any rights Defendants claim are junior and non-exclusive to Plaintiffs' superior common-law trademark rights.

77. Plaintiffs' continued use of the "Wills Wing" name, Pearson's Inline Mark, and related marks on willswing.com and in connection with their educational and informational activities does not infringe any trademark rights of Defendants and does not create a likelihood of confusion.

78. Plaintiffs are entitled to a declaratory judgment that:

a. Plaintiffs (through SKI and by succession) are the owners of superior

BOHM WILDISH & MATSEN, LLP
600 Anton Blvd., Suite 640
Costa Mesa, CA 92626
(714) 384-6500
(714) 384-6501 (fax)

14

COMPLAINT FOR DECLARATORY RELIEF

common-law trademark rights in the "Wills Wing" name, the Inline Mark, and related marks;

b. Defendants have no superior ownership or rights in those marks;

c. Plaintiffs' use of the marks does not infringe any trademark rights claimed by Defendants; and

d. Defendants' pending USPTO applications (Serial Nos. 99782198 and 99783048) should not issue in a manner that interferes with Plaintiffs' senior rights.

### THIRD CAUSE OF ACTION

Declaratory Judgment of Non- Misappropriation of Trade Secrets

(28 U.S.C. §§ 2201–2202; Defend Trade Secrets Act, 18 U.S.C. § 1836, et seq. and California Uniform Trade Secrets Act, Cal. Civ. Code § 3426 et seq.)

79.  Plaintiffs reallege and incorporate by reference the allegations contained in foregoing paragraphs as though fully set forth herein.

80.  An actual, justiciable controversy exists regarding trade secret ownership and alleged misappropriation. Defendants have claimed that Plaintiffs' publication of legacy technical documentation and designs on GitHub constitutes misappropriation of the "Asserted Trade Secrets."

81.  Any technical information, designs, or documentation originated with or was authored by Plaintiffs or SKI. No trade secrets were included in the 2021 asset sale. Upon SKI's dissolution, any remaining trade secret rights were distributed to the shareholders, including Plaintiffs.

82.  Plaintiffs' publication of historical, publicly oriented safety, maintenance, and educational materials does not constitute misappropriation of any trade secret belonging to Defendants.

83.  Moreover, the owner's manuals, service bulletins, technical documentation, and HGMA airworthiness compliance data at issue have been publicly available and downloadable on the "willswing.com" website domain (maintained first

BOHM WILDISH & MATSEN, LLP
600 Anton Blvd., Suite 640
Costa Mesa, CA 92626
(714) 384-6500
(714) 384-6501 (fax)

by SKI and then by Plaintiffs) for approximately two decades. Due to this long-term, unrestricted public disclosure, such materials are generally known to the hang gliding community and the public, are readily ascertainable by proper means, and therefore cannot qualify as trade secrets under the Defend Trade Secrets Act or the California Uniform Trade Secrets Act. Any claim by Defendants that these materials constitute protectable trade secrets is without merit.

84.    Plaintiffs are entitled to a declaratory judgment that:

a. Plaintiffs own or have rights to the technical information and documentation at issue;

b. Defendants have no enforceable trade secret rights in the published materials; and

c. Plaintiffs' conduct does not constitute trade secret misappropriation.

### FOURTH CAUSE OF ACTION

Declaratory Judgment of No Unfair Competition or False Designation of Origin

(28 U.S.C. §§ 2201–2202; 15 U.S.C. § 1125(a) (Lanham Act § 43(a)))

85.    Plaintiffs reallege and incorporate by reference the allegations contained in foregoing paragraphs as though fully set forth herein.

86.    An actual, justiciable controversy exists regarding whether Plaintiffs' activities constitute unfair competition or false designation of origin under the Lanham Act. Defendants have expressly threatened such claims.

87.    Plaintiffs' truthful identification of their historical role with SKI, their ownership of copyrights and trademarks, and their provision of accurate legacy technical and safety information does not constitute false designation of origin, passing off, or unfair competition.

88.    There is no likelihood of confusion between Plaintiffs' non-commercial, educational, and archival activities and any commercial activities of Defendants.

89.    Plaintiffs are entitled to a declaratory judgment that their conduct does not constitute unfair competition or false designation of origin under 15 U.S.C. §

BOHM WILDISH & MATSEN, LLP
600 Anton Blvd., Suite 640
Costa Mesa, CA 92626
(714) 384-6500
(714) 384-6501 (fax)

16

COMPLAINT FOR DECLARATORY RELIEF

1125(a) or related state law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Steven Pearson and Michael Meier respectfully pray for judgment against Defendants Wills Wing, Inc. and Wills Wing Holding, Inc., as follows:

90. For a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 that:

    a. Plaintiffs are the rightful owners of the copyrights in Pearson's Inline Mark (created in or around early 1983) and in Plaintiffs' Other Works (as defined herein);

    b. Defendants have no ownership or other rights in Pearson's Inline Mark or Plaintiffs' Other Works;

    c. Plaintiffs' use, publication, and distribution of the Inline Mark and Plaintiffs' Other Works on willswing.com, GitHub, and elsewhere does not infringe any copyright rights claimed by Defendants;

91. For a declaratory judgment that:

    a. Plaintiffs (through SKI and by succession upon dissolution) hold superior common-law trademark rights in the "Wills Wing" trade name, the Seagull Mark, the Stacked Mark, Pearson's Inline Mark, and related marks;

    b. Defendants have no enforceable ownership or superior rights in the "Wills Wing" trade name or Pearson's Inline Mark;

    c. Plaintiffs' continued use of the "Wills Wing" trade name, Pearson's Inline Mark, and related marks does not infringe any trademark rights claimed by Defendants and does not create a likelihood of confusion;

    d. Defendants' pending USPTO trademark applications (Serial Nos. 99782198 and 99783048) should not be registered in a manner that interferes with Plaintiffs' senior rights;

BOHM WILDISH & MATSEN, LLP
600 Anton Blvd., Suite 640
Costa Mesa, CA 92626
(714) 384-6500
(714) 384-6501 (fax)

17

COMPLAINT FOR DECLARATORY RELIEF

92.   For a declaratory judgment that Plaintiffs' conduct does not constitute misappropriation of any trade secrets belonging to Defendants;

93.   For a declaratory judgment that Plaintiffs' conduct does not constitute unfair competition, false designation of origin, or passing off under 15 U.S.C. § 1125(a) (Lanham Act § 43(a)) or related state law;

94.   For a declaratory judgment that Plaintiffs are the rightful owners (or successors-in-interest) of the "willswing.com" domain name and have the exclusive right to continue using, maintaining, and controlling it, free from any interference or claim by Defendants;

95.   For injunctive relief enjoining Defendants from engaging in any further threats or interference with Plaintiffs' use of the "willswing.com" domain or Wills Wing IP;

96.   For an award of Plaintiffs' costs of suit;

97.   For an award of reasonable attorneys' fees and expenses to the extent permitted by law, including but not limited to 17 U.S.C § 505 and 15 U.S.C § 1117(a);

98.   For such other and further relief as the Court deems just and proper.

### Demand for Jury Trial

Plaintiffs demand a jury trial in the above-entitled action.

Dated: June 12, 2026

**BOHM WILDISH & MATSEN, LLP**

By: _____
James G. Bohm, Esq.
Cecilia Preciado, Esq.
Michael C. Gangi, Esq.
Attorneys for Plaintiffs,
STEVEN PEARSON and MICHAEL MEIER

BOHM WILDISH & MATSEN, LLP
600 Anton Blvd., Suite 640
Costa Mesa, CA 92626
(714) 384-6500
(714) 384-6501 (fax)

18
COMPLAINT FOR DECLARATORY RELIEF

# Exhibit A

WILLIAM E. ST. JOHN
COUNTY CLERK
700 CIVIC CENTER DRIVE, WEST
P. O. BOX 838
SANTA ANA, CALIFORNIA 92702

**FILED**

MAY 18 1976

WILLIAM E. ST. JOHN, County Clerk

By _____ Deputy

**REMINDER**
1. Submit Original and 3 copies.
2. Filing Fee $10.00
3. Provide return Envelope, if mailed.

**SEE REVERSE SIDE FOR INSTRUCTIONS**

# FICTITIOUS BUSINESS NAME STATEMENT

### THE FOLLOWING PERSONS(S) IS(ARE) DOING BUSINESS AS:

1. Fictitious Business Name(s)
   **WILLS WING INC.**

2. Street Address, City & State of Principal place of Business in California     Zip Code
   **1208 - H  E. Walnut      Santa Ana, CA     92701**

3. Full name of Registrant     (if corporation - show state of incorporation)
   **Sport Kites, Inc.     (California)**

   Residence Address     City     State     Zip Code
   **1208- H  E. Walnut     Santa Ana, CA     92701**

   Full name of Registrant     (if corporation - show state of incorporation)

   Residence Address     City     State     Zip Code

   Full name of Registrant     (if corporation - show state of incorporation)

   Residence Address     City     State     Zip Code

   Full name of Registrant     (if corporation - show state of incorporation)

   Residence Address     City     State     Zip Code

4. This business is conducted by ( ) an individual ( ) a general partnership ( ) a limited partnership
   ( ) an unincorporated association other than a partnership (X) a corporation ( ) a business trust     (CHECK ONE ONLY)

5. Signed _____

   Typed or Printed _____

   If Registrant a corporation sign below:

   Corporation Name **Sport Kites, Inc.**

   Signature & Title **Maralys K. Wills**
   **Secretary**

This statement was filed with the County Clerk of Orange County on date indicated by file stamp above

### CERTIFICATION

I hereby certify that the foregoing is a correct copy of the original on file in my office.
William E. St John, County Clerk

By _____ Deputy

78

FILE NO. **F56579**

F0182-266.2

**FOR BANK AND OTHER REQUIRED NEEDS (CERTIFIED)**

# Affidavit of Publication

**(12)** COUNTY OF ORANGE,  )
STATE OF CALIFORNIA,  )  ss.
                      )

### BILL MOSES

of said County, duly sworn, deposes and says:

That he is and at all times herein mentioned was a citizen of the United States, over the age of twenty-one years, and is competent to be a witness on the trial of the above entitled action, and that he is not a party to or is not interested in the above entitled matter.

That he is the principal clerk of the printer and publisher of THE TUSTIN NEWS, which is a weekly newspaper of general circulation, printed, published and circulated in the said County of Orange, and is published for the dissemination of local and telegraphic news and intelligence of a general character and has a bonafide subscription list of paying subscribers, and said paper has been established, printed and published in the City and Judicial Township of Tustin, County of Orange, State of California, for at least one year next before the publication of the first insertion of this notice; and the said newspaper is not devoted to the interests of, or published for the entertainment of any particular class, profession, trade, calling, race or denomination or any member thereof.

That the __FICTIOUS BUSINESS NAME STATEMENT__

__Wills Wing Inc.__



PUBLIC NOTICE
FILE NO. F 56579
FICTITIOUS BUSINESS
NAME STATEMENT
The following persons are doing business as:
Fictitious Business Name:
WILLS WING, INC.,
1208-H E. Walnut,
Santa Ana, CA 92701.
Full Name of Registrant:
Sport Kites, Inc.,
A California Corporation,
1208 - H E. Walnut,
Santa Ana, CA 92701.
This business is conducted by a corporation.
  Corporation Name:
  Sport Kites, Inc.,
  Maralys K. Wills,
  Secretary.
This statement was filed with the County Clerk of Orange County on May 18, 1976.
I hereby certify that the foregoing is a correct copy of the original on file in my office.
  WILLIAM E. ST JOHN,
  County Clerk.
Publish: The Tustin News,
May 27, June 3, 10 and 17, 197[ ]

of which the annexed is a printed copy, was published in said newspaper at least __Four Times__

commencing from the __27th__ day of __May__

19__76__, and ending on the __17th__ day of __June__

19__76__, both days inclusive, and in the regular and entire issue of said newspaper proper, and not in a supplement; and said notice was published therein on the following dates, to-wit:

__May 27, June 3, 10 and 17, 1976__

_Bill Moses_

Subscribed and sworn to before me this __17th__ day of

__June__ , 19 __76__

OFFICIAL SEAL
OLIVE D. BATEMAN
NOTARY PUBLIC CALIFORNIA
PRINCIPAL OFFICE IN
ORANGE COUNTY
My Commission Expires Feb. 2, 1980

(SEAL)

_Olive D. Bateman_

Notary Public in and for the County of Orange, State of California

My Commission Expires __February 2__, 19 __80__      F 56579      76

# Exhibit B



# WILLS WING, INC.

1208-H E. WALNUT - SANTA ANA, CALIFORNIA 92701
May 24, 1977                           (714) 547-1344

Dear Cross Country Owner,

The problem  that we have been working on night and day, as you well know, is our new Hang 4 ship, the Cross Country.  We produced the glider thinking it to be fully tested and a fine, safe, reliable glider.  We questioned the design seriously only after Burke Ewing dove 300' at Torrey Pines, Calif, piloting an XC 110 G prototype.  He avoided injury and the glider did recover on its own.  The glider was a pulleyed, keel-pocketed design, very similar to the XC.  Because of its similarity, and because of some less serious, but also scary incidents on 220's, we grounded all XC's, large and small.

We decided to mellow out the characteristics somewhat in the interest of all involved with our sport.  The changes have been costly, time-consuming and very aggravating on the whole, but we know that the end result is very much worthwhile.  A brief summary of the modifications is as follows:

We have put more billow in the sail, added reflex, and supported the camber batten pocket to insure a more positive-pitching, yaw-stable glider.  We have put the modified versions of the 185 and 220 through grueling tests, doing everything possible to make them tuck.  The results were conclusive.  After completing the following modifications we believe you'll find you have the mellowest, highest performing flex wing on the market.  We're very sorry about the problems.  We know it's tough not flying your new bird -- and we thank you for being as patient as you've been.

Good Winds,

Your friends at Wills Wing

P.S.   Since we talked to you on the phone last, we have made the decision to send you a new set of top wires as well as the bottom wires.   You should send both sets back (excluding your bottom side wires....control bar to wing wire).

# Exhibit C

 1208 H East Walnut. Santa Ana. CA 92701
Telephone - (714) 547-1344/6866

## AGREEMENT TO SELL AND PURCHASE STOCK

This agreement is entered into between Chris A. Wills and Linda Liquori on August 13, 1981. Chris Wills Agrees to sell, and Linda Liquori agrees to buy one fourth of one per cent ownership in Sport Kites, Inc., dba Wills Wing, Inc., for the total selling price of $1875.00 (one thousand eight hundred and seventy five dollars. ). This agreement to buy and sell is conditional on the approval of the California Commisioner of Corporations. Should such approval not be forthcoming, both parties agree that this agreement will revert to a loan agreement, and that this written and signed agreement shall then constitue a promissory note for the sum of $1875 payable to Linda Liquori by Chris Wills on demand of Linda Liquori.

This agreement is entered into and signed on August 13, 1981 by:

_Chris A Wills_ MWD 8/13/81
Chris A. Wills

_Linda Liquori_ 8-13-81
Linda Liquori



1208-H East Walnut, Santa Ana, CA 92701
Telephone = (714) 547-1344/6366

## AGREEMENT TO SELL AND PURCHASE STOCK

This agreement is entered into between Chris A. Wills and Robert T. Kells Jr. on August        1981. Chris Wills Agrees to sell, and Robert T. Kells Jr. agrees to buy one fourth of one per cent ownership in Sport Kites, Inc., dba Wills Wing, Inc., for the total selling price of $1875.00 (one thousand eight hundred and seventy five dollars. ).  This agreement to buy and sell is conditional on the approval of the California Commisioner of Corporations. Should such approval not be forthcoming, both parties agree that this agreement will revert to a loan agreement, and that this written and signed agreement shall then constitue a promissory note for the sum of $1875 payable to Robert T. Kells Jr. by Chris Wills on demand of Robert T. Kells Jr.


This agreement is entered into and signed on

by:

_Chris A. Wills MD_    8/18/8

Chris A. Wills

_Robert T. Kells Jr._    8/18/81

Robert T. Kells Jr.



1208-H East Walnut, Santa Ana, CA 92701
Telephone – (714) 547-1344/6366

## AGREEMENT TO SELL AND PURCHASE STOCK

This agreement is entered into between Chris A. Wills and Michael W. Meier on August 13,      1981. Chris Wills Agrees to sell, and Michael W. Meier    agrees to buy one fourth of one per cent ownership in Sport Kites, Inc., dba Wills Wing, Inc., for the total selling price of $1875.00 (one thousand eight hundred and seventy five dollars. ).  This agreement to buy and sell is conditional on the approval of the California Commisioner of Corporations. Should such approval not be forthcoming, both parties agree that this agreement will revert to a loan agreement, and that this written and signed agreement shall then constitue a promissory note for the sum of $1875 payable to Michael W. Meier by Chris Wills on demand of Michael W. Meier.


This agreement is entered into and signed on  August 13, 1981 by:

8/13/81

Chris A. Wills


8-13-81

Michael W. Meier



1208-H East Walnut, Santa Ana, CA 92701
Telephone – (714) 547-1344/6366

Richard Spencer
Cesena, Lee and Spencer
1920 E. 17th  Suite 206
Santa Ana, Ca. 92701

Dear Richard,

Here's what we want to do:

1) Split the stock 24  for one. We now have 1000 shares;
each share is 1/10 of one per cent. We want  24 thousand shares,
with each share worth 1/240 of one per cent. The ownership
distribution so far is the same as now;  Meier/Pearson/Liquori/
Kells each have 12.5%, Chris Wills has 24%, Suzette has 26%.

2) Transfer 1/4 % from Chris Wills to each of Meier,
Pearson, Liquori, Kells, for the selling price of $1875/ 1/4%,
as per the enclosed copy of the agreements.  Resulting
ownership is Meier/pearson/Liquori/Kells - 12.75% each,
Chris Wills - 23%, Suzette Wills - 26%.

We will (have, in Linda's and my case) come up with the money
to give to Chris out of our own pockets.

If any of this is unclear, let me know.

Hope you had a good vacation!

Mike

Mike Meier



1208-H East Walnut, Santa Ana, CA 92701
Telephone – (714) 547-1344/6366

## AGREEMENT TO SELL AND PURCHASE STOCK

This agreement is entered into between Chris A. Wills and Michael W. Meier on August 13,    1981. Chris Wills Agrees to sell, and Michael W. Meier   agrees to buy one fourth of one per cent ownership in Sport Kites, Inc., dba Wills Wing, Inc., for the total selling price of $1875.00 (one thousand eight hundred and seventy five dollars. ).  This agreement to buy and sell is conditional on the approval of the California Commisioner of Corporations. Should such approval not be forthcoming, both parties agree that this agreement will revert to a loan agreement, and that this written and signed agreement shall then constitue a promissory note for the sum of $1875 payable to Michael W. Meier by Chris Wills on demand of Michael W. Meier.


This agreement is entered into and signed on  August 13, 1981 by:

Chris A. Wills        8/13/81

Chris A. Wills


Michael W. M.        8-13-81

Michael W. Meier



1208-H East Walnut, Santa Ana, CA 92701
Telephone — (714) 547-1344/6366

## AGREEMENT TO SELL AND PURCHASE STOCK

This agreement is entered into between Chris A Wills and Steven
Pearson on April 21, 1982.  Chris Wills agrees to buy one fourth of
one per cent ownership in Sport Kites, Inc., dba Wills Wing, Inc.,
for the total selling price of $1875.00 (one thousand eight hundred
and seventy five dollars.)  This agreement to buy and sell is
conditional on the approval of the California Commisioner of
Corporations.  Should such approval nhot be forthcoming, both parties
agree that this agreement will revert to a loan agreement, and that this
this written and signed agreement shall then constitute a promissory not
note for the sum of $1875. payable to Steven Pearson by Chris
Wills on demand of Steven Pearson.

This agreement is entered into and signed on April 21, 1982 by:

Chris A. Wills  M.D.

Steven Pearson

# Exhibit D



# Exhibit E

Case 8:26-cv-01514    Document 1    Filed 06/12/26    Page 34 of 103   Page ID #:34

# WILLS WING NEWS

VOL.1 NO 3

©1984 by Sport Kites, Inc.

September 15, 1984

Published by: Wills Wing Inc.
1208H E. Walnut
Santa Ana, CA 92701

## WILLS WING HP NOW RELEASED

Wills Wing has announced the release of their new, long awaited high performance glider, the HP 170. The HP was HGMA Certified on August 29th, and made its debut in the U.S. Nationals, flown by designer Steve Pearson, Rob Kells, Rick Rawlings, and Bruce Case. The HP has about the same span as a Duck 180, but about 12 square feet less area, giving it an aspect ratio of 7.0. The double surface has been extended, and the keel pocket eliminated, allowing the keel to be enclosed within the double surface. The technical details of this unique configuration and its advantages are more fully explained in the Tech Ad #3, elsewhere in this issue.



### HP 170 SPECIFICATIONS

| | |
|---|---|
| MODEL | 170 |
| AREA | 168 SQ FT |
| SPAN | 34' 4" |
| NOSE ANGLE | 128 DEGREES |
| APECT RATIO | 7.0 |
| GLIDER WEIGHT | 66 LBS |
| CERTIFIED PILOT WEIGHT | 150-250 LBS |
| OPTIMUM PILOT WEIGHT | 165-190 LBS |
| PILOT PROFICIENCY | IV |
| PRICE (STOCK COLORS) | $ 2500 |

In the Nationals, the HP 170 demonstrated a consistent and convincing performance advantage over the other gliders in the meet, including all the variable geometry gliders with their variable geometry tightened all the way down. Our

*"The HP offers up to a full point L/D advantage over an Attack Duck."*

measurements have indicated that the HP, when tuned for maximum performance, offers up to a full point L/D advantage over an Attack Duck (300 feet altitude gain over a five mile glide). When tuned for optimum handling, the HP obtains an L/D equivalent to the best of the other gliders available, while offering substantially quicker control response. The HP has without question the broadest speed range of any production flex wing on the market, and can exceed 60 mph on a final pull in from level flight. (Recommended VNE speed is 46 mph for safety reasons).

If you're looking for the very latest in high performance flex wing technology, see your Wills Wing Dealer about an HP. (It stands for High Performance!)



## WILLS WING ENTERS BOARD SAILING MARKET

Wills Wing is now manufacturing a full line of fully battenned surf sails in six sizes from 37 to 71 square feet. Designed by Steve Pearson in consultation with Guy Lindburg, the new Wills Wing surf sails have already aquired a reputation as being among the best on the market. If you are presently into board sailing, see your local dealer about our new line of quality sails.

## 1985 WORLD TEAM

With all of the major scheduled contests over with for 1984, we can now project who the members of the next USHGA World Team will be. Wills Wing Pilots Steve Pearson, Rob Kells, Kevin Kernohan, Rick Rawlings, and Mark Bennett have all qualified for the eight man team. Rich Pfeiffer, Stew Smith and Chris Bulger will fill out the remaining slots. Rick Rawlings, after two years of outstanding competition flying, will be the number one ranked pilot in the country for 1985. Congratulations to Rick, and to all the members of the team!

While we're on the subject, please read Erik Fair's article on the financial plight of the USHGA in the August issue of Hang Gliding Magazine, if you haven't already.

Continued next column

Continued from previous column

Think about how important the USHGA programs are to our sport. Erik points out that a mere $4 contribution per member will replenish the depleted USHGA cash reserves, and that $2 more will pay to get our 1985 World Team to the meet! We wholeheartedly support Erik's fund raising efforts, and we hope that you will too.

## U S NATIONALS

The 1984 US Nationals have just concluded at Crestline, California. Going into the last round, we had Steve Pearson in first place, with Rick Rawlings just three spots behind, and in solid shape to repeat as overall US National Champion, based on his points for the League, the Regionals, and the Nationals. Then disaster struck.

The seventh round was plagued by poor soaring conditions, and saw only four pilots able to make the course. Many of the pilots in the top ten, who had built substantial leads in the Total Elapsed Time scoring format over the pilots below them collected horrendous time penalties out of all proportion to the significance of the round. Steve Pearson fell to ninth place, and Rick Rawlings dropped to eighth while Rich Pfeiffer went from sixth to first, and Stew Smith went from ninth to fourth, gaining enough points to take the National Championship title. The eighth round was cancelled due to threatening thunderstorms.

*"If you show up at a hang gliding contest, you deserve everything you get."*

Kind of puts one in mind of Cronk's Law. For those of you too recent to the sport to be familiar with this sage observation, legend has it that Dave once remarked that, "If you show up at a hang gliding contest, you deserve everything you get."

At any rate, when the smoke had cleared, the tumult and shouting had died, and the final results were posted, it turned out that Wills Wing pilots had taken fully eight out of the top thirteen places in the meet, including a second place finish by Rob Kells. No other manufacturer had more than two gliders in this group.

## TERRY WILKINS WINS NATIONALS IN SPORTING CLASS ON DUCK 180

Local Southern California pilot Terry Wilkins flying a 180 Attack Duck turned back Paul Robinson on a VG Sensor and all the rest of the pilots in the Sporting Class to win the event at this year's US Nationals. The sporting class ran the same course each day as the World Class, using the same Total Elapsed Time scoring format. Congratulations Terry!

# Exhibit F

The Wayback Machine - https://web.archive.org/web/19970214033012/http://www.willswing.com:80/



# Manufacturers of Hang Gliders, Harnesses, & Flight Accessories

# North, Central, & South American Distributors of Swing Paragliders



**Rob Kells Flying the Fusion Prototype**
**Proto Information** | **High Resolution View**

Welcome to the world wide family of Wills Wing pilots. We are a company of pilots and aviation enthusiasts, and our goal is to serve your flying needs now and in the future, as we have done for pilots throughout the world since 1973.

Rob Kells, Mike Meier, Linda Meier, Steven Pearson, and Chris Wills- Owners
Rick Zimbelman - Purchasing

Tom Blaty - Machinist / Special Projects
Tim Frederick - Paragliding, Test Pilot
Ken Howells - Website, Test Pilot
Jamie Lasser - Airframes, Test Pilot
Jim Wood - Final Assembly, Test Pilot

Paul Diehl - Sail Loft Manager
Raul Bonilla, Maria Casillas,
Ruben Frausto, Martin Maldonado,
Carlos Mendosa, Mariana Saenz,
Victor Sosa - Sail Makers
Carol Mortenson- Accounting

Gene Atkins - Harnesses Manager
Martha Diorio, Eva Hanska
- Accessories/ Harness Makers
Chris Colasont - Shipping
Rob McKenzie- Test Pilot
Dianne McKenzie- Test Support

We all wish you a safe and enjoyable flying career.

*Wills Wing, Inc.*

Wills Wing EmployeesGroup Photo

**Best experienced with**



---

## Contact Information

| Telephone | Postal Address | Departments | |
|---|---|---|---|
| 714-998-6359 | Wills Wing | Dealer / Customer Support: **Rob Kells** | Harness Production: **Gene Atkins** |
| **Fax** | 500 W. Blueridge | Production Sched./ Tech. Support: **Mike Meier** | Paragliding: **Tim Frederick** |
| 714-998-0647 | Orange, CA 92865 | Design & Engineering: **Steve Pearson** | Website: **Ken Howells** |

Case 8:26-cv-01514 Document 1 Filed 06/12/26 Page 37 of 103 Page ID #:37

**Proline** USA      Order Desk, Dealer Service: **Linda Meier**      Accounting: **Carol Mortenson**
714-998-7371      Purchasing: **Rick Zimbelman**

---

**Send mail to comments@willswing.com**
**with questions or comments about this web site.**
**Copyright © 1996 Wills Wing Inc.**
**Last modified:February 11, 1997**

PAGE COUNTER

# Exhibit G



# INVOICE

Invoice Number: 22298
Invoice Date: Sep 3, 2021
Page: 1

.

500 West Blueridge Ave
Orange, CA 92865
USA

Voice: 714 998 6359
Fax: 714 998 0647

| Bill To: | Ship to: |
|---|---|
| Rodolfo Gotés Navarro<br>Km 6.3 carretera Valle de Bravo -<br>Temascaltepec<br>Mesa de Jaimes ( al lado de la Coca Cola)<br>Valle de Bravo, EM  51200 | Rodolfo Gotés Navarro<br>Km 6.3 carretera Valle de Bravo -<br>Temascaltepec<br>Mesa de Jaimes ( al lado de la Coca Cola)<br>Valle de Bravo, EM  51200<br>MEXICO |

| Customer ID | Customer PO | Payment Terms | |
|---|---|---|---|
| Wills Wing 2022 | | Net Due | |
| Sales Rep ID | Shipping Method | Ship Date | Due Date |
| | Truck | 9/4/21 | 9/3/21 |

| Quantity | Item | Item U | Description | Unit Price | Amount |
|---|---|---|---|---|---|
| 1.00 | DESCRIPTION | <Each | Tools, fixtures, sewing machines per manifest | 9,900.00 | 9,900.00 |

| | | |
|---|---|---|
| Subtotal | | 9,900.00 |
| Sales Tax | | |
| Freight | | |
| Total Invoice Amount | | 9,900.00 |

Check/Credit Memo No:

Payment/Credit Applied

| TOTAL | 9,900.00 |
|---|---|



# INVOICE

Invoice Number: 22299
Invoice Date: Sep 3, 2021
Page: 1

.

500 West Blueridge Ave
Orange, CA  92865
USA

Voice: 714 998 6359
Fax: 714 998 0647

| Bill To: | Ship to: |
|---|---|
| Rodolfo Gotés Navarro<br>Km 6.3 carretera Valle de Bravo -<br>Temascaltepec<br>Mesa de Jaimes  ( al lado de la Coca Cola)<br>Valle de Bravo, EM  51200 | Rodolfo Gotés Navarro<br>Km 6.3 carretera Valle de Bravo -<br>Temascaltepec<br>Mesa de Jaimes  ( al lado de la Coca Cola)<br>Valle de Bravo, EM  51200<br>MEXICO |

| Customer ID | Customer PO | Payment Terms | |
|---|---|---|---|
| Wills Wing 2022 | | Net Due | |
| **Sales Rep ID** | **Shipping Method** | **Ship Date** | **Due Date** |
| | Truck | 9/4/21 | 9/3/21 |

| Quantity | Item | Item U | Description | Unit Price | Amount |
|---|---|---|---|---|---|
| 1.00 | DESCRIPTION | <Each | Sailcloth - per manifest | 17,007.00 | 17,007.00 |
| 1.00 | DESCRIPTION | <Each | Aluminum Tubing & Extrusion - per manifest | 40,115.00 | 40,115.00 |
| 1.00 | DESCRIPTION | <Each | Fasteners, fittings & other components - per manifest | 80,801.00 | 80,801.00 |

| | | |
|---|---|---|
| Subtotal | | 137,923.00 |
| Sales Tax | | |
| Freight | | |
| Total Invoice Amount | | 137,923.00 |

Check/Credit Memo No:

Payment/Credit Applied

| **TOTAL** | **137,923.00** |
|---|---|

# WILLS WING

960 N. Tustin St
#323
Orange, CA  92867
USA

Voice:
Fax:

# INVOICE

Invoice Number:    22317
Invoice Date:      Sep 30, 2021
Page:              1

| Bill To: | Ship to: |
|---|---|
| Rodolfo Gotés Navarro<br>Km 6.3 carretera Valle de Bravo -<br>Temascaltepec<br>Mesa de Jaimes  ( al lado de la Coca Cola)<br>Valle de Bravo, EM  51200 | Navarro Rodolfo Gotés<br>Km 6.3 carretera Valle de Bravo -<br>Temascaltepec<br>Mesa de Jaimes  ( al lado de la Coca Cola)<br>Valle de Bravo, EM  51200<br>MEXICO |

| Customer ID | Customer PO | Payment Terms | |
|---|---|---|---|
| Wills Wing 2022 | | Net Due | |
| **Sales Rep ID** | **Shipping Method** | **Ship Date** | **Due Date** |
| 002 | Cust. Pickup | 9/30/21 | 9/30/21 |

| Quantity | Item | Item U | Description | Unit Price | Amount |
|---|---|---|---|---|---|
| 1.00 | DESCRIPTION | <Eacl | 1988 GMC Pickup Truck | 167.50 | 167.50 |

| | | |
|---|---|---|
| Subtotal | | 167.50 |
| Sales Tax | | |
| Freight | | |
| Total Invoice Amount | | 167.50 |

Check/Credit Memo No:

Payment/Credit Applied

| **TOTAL** | **167.50** |
|---|---|



# INVOICE

960 N. Tustin St
#323
Orange, CA  92867
USA

Voice:

Fax:

| Invoice Number: | 22361 |
|---|---|
| Invoice Date: | Nov 22, 2021 |
| Page: | 1 |

| Bill To: | Ship to: |
|---|---|
| Rodolfo Gotés Navarro<br>Km 6.3 carretera Valle de Bravo -<br>Temascaltepec<br>Mesa de Jaimes ( al lado de la Coca Cola)<br>Valle de Bravo, EM  51200 | Navarro Rodolfo Gotés<br>Km 6.3 carretera Valle de Bravo -<br>Temascaltepec<br>Mesa de Jaimes ( al lado de la Coca Cola)<br>Valle de Bravo, EM  51200<br>MEXICO |

| Customer ID | Customer PO | Payment Terms | |
|---|---|---|---|
| Wills Wing 2022 | | Net Due | |
| **Sales Rep ID** | **Shipping Method** | **Ship Date** | **Due Date** |
| 002 | Best Way | 11/22/21 | 11/22/21 |

| Quantity | Item | Item U | Description | Unit Price | Amount |
|---|---|---|---|---|---|
| 4.00 | 75A-1318 | EA | PARACHUTE LARA 175 GOLD HG | 582.00 | 2,328.00 |
| 5.00 | 75A-1314 | EA | PARACHUTE LARA 250 GOLD HG | 588.00 | 2,940.00 |
| 1.00 | 75A-1324 | EA | PARACHUTE LARA 400 GOLD HG | 895.00 | 895.00 |
| 5.00 | 75B-4010 | EA | DROGUE PARACHUTE | 50.00 | 250.00 |

| | | |
|---|---|---|
| Subtotal | | 6,413.00 |
| Sales Tax | | |
| Freight | 59.13 | |
| Total Invoice Amount | | 6,472.13 |

Check/Credit Memo No:

Payment/Credit Applied

| **TOTAL** | **6,472.13** |
|---|---|

 **CREDIT MEMO**

Credit Memo Number: 90354
Credit Date:          Nov 30, 2021
Page:                 1

960 N. Tustin St
#323
Orange, CA  92867
USA

Voice:
Fax:

| Credit To: |
|---|
| Rodolfo Gotés Navarro |
| Km 6.3 carretera Valle de Bravo - Temascaltepec |
| Mesa de Jaimes  ( al lado de la Coca Cola) |
| Valle de Bravo, EM  51200 |
| MEXICO |

| Customer ID | Customer PO | Sales Rep ID |
|---|---|---|
| Wills Wing 2022 | | |

| Quantity | Item | Description | Unit Price | Amount |
|---|---|---|---|---|
| | | Discount on purchased inventory | | -51,104.48 |
| | | Subtotal | | -51,104.48 |
| | | Sales Tax | | |
| | | Freight | | |
| Invoice No | | **TOTAL** | | **-51,104.48** |

# Exhibit H

Form **8594**

(Rev. November 2021)
Department of the Treasury
Internal Revenue Service

# Asset Acquisition Statement
## Under Section 1060
▶ **Attach to your income tax return.**
▶ **Go to www.irs.gov/Form8594 for instructions and the latest information.**

OMB No. 1545-0074

Attachment
Sequence No. **169**

| Name as shown on return | Identifying number as shown on return |
|---|---|
| **Sport Kites, Inc. DBA Wills Wing, Inc.** | **93-2810373** |

Check the box that identifies you:
☐ Purchaser    ☑ Seller

## Part I    General Information

| **1**    Name of other party to the transaction | Other party's identifying number |
|---|---|
| **Wills Wing, Inc.** | **87-2156793** |

Address (number, street, and room or suite no.)

**1800 West Loop South Ste 1740**

City or town, state, and ZIP code

**Houston, TX 77027**

| **2**    Date of sale | **3**    Total sales price (consideration) |
|---|---|
| **11/30/2021** | **103,358.15** |

## Part II    Original Statement of Assets Transferred

| **4**    Assets | Aggregate fair market value (actual amount for Class I) | Allocation of sales price |
|---|---|---|
| Class I | $ | $ |
| Class II | $ | $ |
| Class III | $ | $ |
| Class IV | $ **93,290.65** | $ **93,290.65** |
| Class V | $ **10,067.50** | $ **10,067.50** |
| Class VI and VII | $ | $ |
| Total | $ | $ |

**5**  Did the purchaser and seller provide for an allocation of the sales price in the sales contract or in another written document signed by both parties? . . . . . . . . . . . . . . . . . . . . . . . .  ☐ Yes  ☑ No

If "Yes," are the aggregate fair market values (FMV) listed for each of asset Classes I, II, III, IV, V, VI, and  VII the amounts agreed upon in your sales contract or in a separate written document? . . . . . . . . .  ☐ Yes  ☐ No

**6**  In the purchase of the group of assets (or stock), did the purchaser also purchase a license or a covenant not to compete, or enter into a lease agreement, employment contract, management contract, or similar arrangement with the seller (or managers, directors, owners, or employees of the seller)? . . . . . . .  ☐ Yes  ☑ No

If "Yes," attach a statement that specifies **(a)** the type of agreement and **(b)** the maximum amount of consideration (not including interest) paid or to be paid under the agreement. See instructions.

**For Paperwork Reduction Act Notice, see separate instructions.**    Cat. No. 63768Z    Form **8594** (Rev. 11-2021)

Form 8594 (Rev. 11-2021)                                                                                                    Page **2**

**Part III**  **Supplemental Statement**—Complete only if amending an original statement or previously filed supplemental statement because of an increase or decrease in consideration. See instructions.

**7**  Tax year and tax return form number with which the original Form 8594 and any supplemental statements were filed.

| **8**  Assets | Allocation of sales price as previously reported | Increase or (decrease) | Redetermined allocation of sales price |
|---|---|---|---|
| Class I | $ | $ | $ |
| Class II | $ | $ | $ |
| Class III | $ | $ | $ |
| Class IV | $ | $ | $ |
| Class V | $ | $ | $ |
| Class VI and VII | $ | $ | $ |
| Total | $ | | $ |

**9**  Reason(s) for increase or decrease. Attach additional sheets if more space is needed.

Form **8594** (Rev. 11-2021)

# Exhibit I

| | |
|---|---|
| **From:** | Alistair Jeffery <ajeffery66@gmail.com> |
| **Sent:** | 2024-04-13 13:22:24 PT |
| **To:** | Steven Pearson <Steve@willswing.com> |
| **Cc:** | Rudy Got\u00e9s <Rudy@willswing.com> |
| **Subject:** | Re: Introduction |

Thanks very much Steve. Let me pick that up with Rudy and we'll sort out a game plan for meeting, a late lunch perhaps, or an afternoon meeting followed by a beer! If the talks are fruitful it'd be good to pick the dialog up again in the morning and perhaps we are working on a term sheet then, before we fly out in the afternoon.

To create a conventional investment structure we'd need to aggregate all of the assets into a single vehicle, which could then raise the expansion capital we've been discussing. If you retain certain elements of the original operation, such as IP, then it'd be good to have those sitting under the same umbrella, and you be paid consideration for that, either stock in the investment company, a royalty structure, or a one-off payment. I suspect some (much) of this IP is in your head, so it may also mean we need to find someone who can work with you in a knowledge transfer sense. Perhaps that has already been done with one of Rudy's existing team. I think all our interests are aligned in that we'd like to see Wills Wing selling 1000 gliders a year again, and the sport back in expansion mode. It's just a matter of designing a strategy to put the business on a financial footing to deliver that, and then executing a sound business plan...

Cheers, Al

On Sat, 13 Apr 2024 at 21:49, Steven Pearson <Steve@willswing.com> wrote:

I'll have more information before you meet with Rudy, but I thought this might be relevant to the NDA. Basically, Sport Kites sold Mexico about 300K in current materials for 100K and donated our fixtures and equipment. The timing of the transaction was predicated on a wind-down agreement between me and Mike when the pandemic hit 18 months earlier, and the sale of our building (separate LLC) which was the bulk of our assets. I wasn't interested in retiring but Mike and Linda are 6 years older than me and past ready to get out. We've been partners and friends since we assumed management from the Wills family after Bob Wills died in 1977. I disclosed the closing to Rudy a few months before the general announcement and I was surprised to learn that he was interested in taking over.  I'm 45 minutes or more from LAX depending on traffic. I'd be happy to drive that direction if you want to meet and stay close to airport to avoid a rental and negotiating LA traffic. Alternately, I can recommend something closer to here. From: Alistair Jeffery <ajeffery66@gmail.com>

Sent: Saturday, April 13, 2024 12:30 PM

To: Steven Pearson <Steve@willswing.com>

Cc: Rudy Gotés <Rudy@willswing.com>

Subject: Re: Introduction Thanks for that background Steve, it's an area I've been struggling to understand, actually who owns what!! I gather from Rudy there is no governing document that sets out the terms by which Wills Wing Mexico operates in relation to Sport Kites, Inc, other than the invoice that evidenced the

sale of the plant and materials, so it's useful to understand the commercial background, plenty more ground to cover when I'm over! I've just booked flights, Rudy, my son Wilson and I fly in at 1215 1st May, so you may like to suggest a convenient place we can all meet up, and we'll make our way there... I've just sent you the NDA via Adobe e-sign, it should be with you shortly if not already. Cheers, Al On Sat, 13 Apr 2024 at 20:10, Steven Pearson <Steve@willswing.com> wrote:Hi Alistair, Your NDA seems reasonable and appropriate. My interest in Wills Wing Mexico is as a concerned advisor and consultant without ownership. Also, I'm essentially the intellectual custodian of all the products that WW Mexico produces because I'm the design engineer, and I shared that information freely and without compensation. Steven Pearson5845 East Lavender CtOrange, California 92867 It may be helpful at some time to include the other directors and officers of Sport Kites, Inc.Michael MeierLina MeierChristopher Wills, MD  Although it's unlikely that they would be involved a new venture, they are very capable advisors and may be helpful in some capacity. We can defer that discussion until we meet. Best, Steve From: Alistair Jeffery <ajeffery66@gmail.com>

Sent: Friday, April 12, 2024 8:51 PM

To: Steven Pearson <Steve@willswing.com>

Cc: Rudy Gotés <Rudy@willswing.com>

Subject: Re: Introduction Terrific! Please see a draft NDA attached, please feel free to mark it up if you have any suggested changes, otherwise I'll send it through to you for e-signature in advance of our meeting. Cheers, Al On Sat, 13 Apr 2024 at 05:30, Steven Pearson <Steve@willswing.com> wrote:Hi Alistair, I'm available on May 1st and 2nd, I'm happy to sign your nda and I don't have any restrictions on the information that I share with you. That would only be a consideration if you requested detailed financial history from Sport Kites, Inc (dba Wills Wing). SteveFrom: Alistair Jeffery <ajeffery66@gmail.com>

Sent: Friday, April 12, 2024 8:10 PM

To: Steven Pearson <Steve@willswing.com>

Cc: Rudy Gotés <Rudy@willswing.com>

Subject: RE: Introduction  Morning Steve, thanks for your quick response, that sounds great. I assume you mean the 30th in Los Angeles, can I just check if you could do 1st May instead? If so, we have flights lined up which would see us arriving LAX 1215 1st May, then heading back out for Europe mid-afternoon on the second, giving us an afternoon and morning to work with. Does that work for you?  Second question, I've prepared a draft non-disclosure agreement for Rudy, which would mutually protect the sharing of information between the Mexican business and me. Is there another entity in the US, or yourself personally, that you'd want to be similarly protected? If so, please let me know and I'll prepare a second brief draft agreement for your review.  I look forward to hearing back from you.  Cheers, Al  Alistair Jeffery

Mobile / Whatsapp (IT): +39 331 442 0360

Mobile (UK): +44 7500 839 400  On Saturday, 13 April 2024, 01:17:22 +0200, Steve Pearson <Steve@willswing.com> wrote: Hi Alistair,   It's nice to hear about your interest in Wills Wing and of course HG in general. I'd be happy to meet with you in Mexico but I already have plans for the 25th (it's our 31st wedding anniversary).  I am available on the 30th so let's plan on that. I'll prepare some background information for you in the next few days.  Best to you, Steve   From: Alistair Jeffery <ajeffery66@gmail.com>

Sent: Thursday, April 11, 2024 10:53 PM

To: Steven Pearson <Steve@willswing.com>

Cc: Rudy Gotés <Rudy@willswing.com>

Subject: Introduction   Hi Steve, I hope you're well! I'm writing to introduce myself, I believe Rudy has briefed you on my potential interest in investing in Wills Wing. I was introduced to Rudy by one of his dealers in Spain, from whom I've bought gliders from (2 x Falcon, 1 x Sport 3). I'm a businessman, based these days in Siena, Italy, although I spent much of my career in Australia and the UK. I'm a very average intermediate pilot with about 80 hours, nearly all on Falcons, which I love. We briefly corresponded back in 2016 regarding a marketing shot.   I'm an engineer by training (mining, sadly!) with a PhD from Imperial College in London, but once I'd completed that, I transitioned almost immediately to banking and finance, where I've spent most of my career. I started my business, Bluestone, in Sydney in 2000, and I continue to

run it from Siena, although its operations are exclusively in the UK now, and more tech focused than finance. I've made a number of investments outside of Bluestone, which is where this transaction would sit. The investment vehicle would be a business called Newton Global Investments Ltd, and I'd be happy to share financial information on that entity under NDA (Rudy has a draft).   I had a long chat with Rudy earlier in the week, and I have a basic understand of the business and current situation, which is facing a number of headwinds, not least of which is the hang-gliding industry more generally, which as we all know has been in decline for some years. I personally think that is reversable, but it'll take clever marketing and some cohesion from the various manufacturers, to combine efforts and push back on the encroachment of paragliding into the free-flight space. We all know hang-gliding is a purer form of flight than paragliding, we just need to battle the convenience factor!   I'm planning to travel to Mexico on 25th April with my son and spend a few days meeting Rudy and his team, looking around the operations, and hopefully getting a flight or two in. If you're up for it, I was then going to come up to LA with Rudy on or around 30 April and meet you there, and chat about your perspectives on the situation, and see if we can design a way forward. You'd be most welcome down in Mexico if you'd like to come down, but we're similarly happy to come up to LA and fly back to Europe out of LAX.   I hope that's of interest Steve, I look forward to hearing back from you. Cheers, Al   --   _____Alistair Jeffery

Mobile / Whatsapp (IT): +39 331 442 0360Mobile (UK): +44 7500 839 400  --   _____Alistair Jeffery

Mobile / Whatsapp (IT): +39 331 442 0360Mobile (UK): +44 7500 839 400

--


_____Alistair JefferyMobile / Whatsapp (IT): +39 331 442 0360Mobile (UK): +44 7500 839 400


==========================================================================

# Exhibit J

| | |
|---|---|
| **From:** | Steven Pearson <Steve@willswing.com> |
| **To:** | Alistair Jeffery <ajeffery66@gmail.com> |
| **Cc:** | Mike Meier, Linda Meier, Chris Wills |
| **Sent:** | 2025-01-21 16:35 PT |
| **Subject:** | Steve's position on Wills Wing IP |

Hi Alistair,

It seems we are at an impasse by exclusively focusing on technical issues of migration. While that is important, it's subsidiary to other issues.

We left the last conversation with a comment from Chris, "If Alistair and Steve can work out some agreement that they're both comfortable with on the IP stuff." And a request from Alistair, "if you could write just a brief description of what it is that you're looking for, a structure to wrap around to, and, and deliver to you in a way that you're happy just so that we're clear on." I agreed with that.

I asked Claude, ChatGPT, Gemini, Llama 3.2, Mistral and Perplexity variations of the question, "If a domain name is sold, identify and explain all legal and technical constraints that can be applied to guarantee persistent and unconditional control of individual email addresses associated with the domain name. Explore all alternatives, recommendations and concerns. Identify the risks and costs of assuring long term and durable control through ownership transfers and dissolution". The answers were consistent—although it's possible, it will be complicated, expensive, require ongoing oversight, and not recommended. My takeaway from this is that maintaining our email addresses is not worth the trouble beyond a transition period.

The other issue is the value of IP, as it's largely at the discretion of the owner but perhaps to some degree associated with fair market assessments.

We never discussed the sale of Wills Wing IP with Mexico shareholders. The invoice from Wills Wing to Mexico clearly specified all details of the sale of raw materials, and Mexico only paid 65% of the total. Wills Wing declined more lucrative opportunities for the sale of IP because the intrinsic value of the Wills Wing was not worth risking on a new venture with a small likelihood of succeeding and thereby jeopardizing our legacy of achievements and contributions to hang gliding.

Filippo's accountant and attorney initiated the subject of ownership of Wills Wing IP in November 2021. Subsequently, the stockholders absent Steve made acquiring Wills Wing IP a high priority and designated Filippo to negotiate the purchase from me. Filippo offered me a $100/glider licensing royalty, acknowledging that the true value was higher but that's what they could afford. I consistently declined the proposal for a multitude of reasons, including, "I do not own it, you can't afford it, it is not essential for Mexico's future", and other legal-structural constrains. Considering that Filippo was pushing for my agreement and transferring the domain name and media assets, which have been under my control, if I had agreed and structured the agreement as a non-compete contract, I would have collected 60K+ in royalties at the offered rate for 2022-2024.

The value of Wills Wing IP at 2021 year-end, based on any metric of price to book, price to earnings, price to sales, price to goodwill and technical expertise was at least 4 times the value of Mexico today. Using a reference of your buyout of Filippo and Leonides at 250K for roughly 50% of Mexico puts the value of Wills Wing 2021 at 2M. Similarly, the value of Wills Wing in 2021 was at least twice as much as Moyes, Icaro, or Aeros.

It should be clear that Mexico's purchase of 100K for 350K of current inventory alone was already an extraordinarily generous contribution to the future of Mexico. But Wills Wing also granted Mexico license-free use product designs, engineering and trademarks for their use (but not for resale). I also negotiated agreements from Polyant, Aviatube and other suppliers to continue supporting Mexico, in many cases with the expectation that I was still involved. Mexico is still using proprietary tooling from several suppliers that was owned by Wills Wing and would cost 1000s to replace.

Further, Mexico did not pay me for the design and setup of their facilities, the training of staff, and operations management, full-time from September to December 2021, then continuing with direct support to Wolfi who was the production manager through Aug 2022. The value of these services, based on my salary, contract rates, or the relative compensation to others in this period is well over 75K. Finally, 100K wouldn't even cover the 40-year-old stock purchases that allowed Mike, Linda, Rob and me to acquire 51% of Wills Wing when it was worth far less than today.

By any measure, the residual value of Wills Wing IP today is still more than Mexico. Mexico has not produced any new in products or services. The content of their website, including manuals and service information, is copied from Willswing.com, and without any attribution or acknowledgment for the origin of almost everything they do. By contrast, Wills Wing innovations are (by a wide margin) the most dominant, widely adopted, integral and essential technologies to almost every modern hang glider.

Notably, there remains an untapped goldmine of residual value in the archive of products that Wills Wing developed and prototyped, from glider configurations to harnesses and related products. The institutional knowledge of HG technology is vanishing in sync with the

age of the innovators. It's already 80% gone, and the youngest engineer with any meaningful experience is over 50 years old, which makes this knowledge even more essential. There is no other talent available anywhere in HG today to reinvent or even implement what's already been done.

Whatever correspondence you may have read from Jessica implying that Wills Wing IP was gifted or sold to Mexico is incomplete and out of context. Jessica's participation was limited to taking notes at directors' meetings for a few months and she was only party to a small fraction of the discussion and efforts to develop Mexico. The directors' meetings tended toward grandiose and aspirational goals rather than the more sobering tasks at hand. I granted Jessica, Wolfi and Monica editorial access to the WW website and social media accounts to support the Mexico transition but never considered sharing administrative control with anyone other than Mike. Jessica added a Mexico contact address on the website and a made several social media posts—nothing tangible and not more than 1% of Wolfi's contributions.

The outstanding question is how these factors affect the residual fair value of Wills Wing IP today. We have already agreed that the product designs are effectively in the public domain and open-source. What remains is domain ownership, social media accounts, trademarks, non-compete agreements, ongoing technical support, product development and other consulting services.

Importantly, the conditions that stopped us from selling IP in 2021 – that is, confidence in an outcome and legacy consistent with our achievements over the last 50 years and a fair valuation—have only declined. Mexico is far short of Wills Wing standards, including customer service and the quality and airworthiness of production gliders.

The following pre-conditions must be met before I would consider any transfer of WW IP:
1. Explicit agreement by all parties that the purchase of WW assets by Mexico never included ownership of the willswing.com domain, social media assets or other unspecified IP and trademarks.
2. An independent evaluation of outstanding IP value or establishment of a mutually agreed standard measure of company value.
3. An unconditional guarantee of unrestricted rights to discuss and share, in any manner, the history and details of all events, products, correspondence and other details associated with Wills Wing through the closing of Sport Kites, Inc. in 2024.

Mike and I also concur regarding the additional constraint of not selling anything that could be considered property of Sport Kites, Inc. This further constrains the path for acquiring the willswing.com domain and social media accounts, making a near-term agreement difficult to envision.

Upon reconsideration of the past 3-1/2 years, I think releasing the IP at anything less than a company valuation of 1M would have been inadvisable. While I acknowledge that value has

declined, it remains substantial. The current proposal has renewed expectations for Mexico's future, which I support, but not at the expense of more unrecognized and uncompensated contributions. Alternative paths forward exist without the Wills Wing IP, with domains like willswing.aero, or negotiating for other established brands like Moyes, Icaro, Aeros, Finsterwalder, NorthWing, Bautek, Avian, Airborne, among others.

Agreement on a longer term seems more feasible, particularly after collaborative progress to address our mutual concerns and aspirations. Mike has shown flexibility in certain details, and similar accommodation may be possible with me as well in time.

Sincerely,
Steve

# Exhibit K

**Mike Meier**

| | |
|---|---|
| **From:** | CHRIS WILLS <cwillsmd@gmail.com> |
| **Sent:** | Tuesday, February 4, 2025 9:28 AM |
| **To:** | Steven Pearson |
| **Cc:** | Alistair Jeffery; Mike Meier; Linda Meier |
| **Subject:** | Re: Steve's position on Wills Wing IP |

I still believe that the internet 'stuff' is way down on the list of stuff that needs attention right now.  If the production, supplies, and costs are not addressed, it won't matter what anybody does on the internet.

I believe any customer who wants to fly a WillsWing glider will be able to figure out how to get to WillsWing.org, so access will not be an issue.  Anybody who wants to buy a glider can't do so on the legacy site.  They will easily figure it out.  Keeping the legacy stuff under Steve's control gives comfort in maintaining the history of what we have accomplished in the past, so any small confusion is not a significant concern.

With Steve on board for design and consulting, future new gliders — which are a critical component for future success — will be what is most needed to improve the chances for success.

Let's move forward!

I am excited to see WillsWing take off.

Chris
Sent from my iPad

> On Feb 2, 2025, at 12:50 PM, Steven Pearson <Steve@willswing.com> wrote:

> Hi Alistair,
> I understand your concerns about documentation and future investment considerations. However, as previously stated, the willswing.com domain and associated assets are not part of our current discussions. Feel free to reach out to me as your position evolves.
> Steve

>> **From:** Alistair Jeffery <ajeffery66@gmail.com>
>> **Sent:** Sunday, February 2, 2025 12:29 PM
>> **To:** Steven Pearson <Steve@willswing.com>
>> **Cc:** CHRIS WILLS <cwillsmd@gmail.com>; Mike Meier <Mike@willswing.com>; Linda Meier <Linda@willswing.com>
>> **Subject:** Re: Steve's position on Wills Wing IP

>> Thanks for your responses Steve and Chris, much appreciated. You'll understand that an investment into a business which is manufacturing a product without a documented

1

ownership or license footing increases my risk materially. I'm intending to raise further capital in 12-18 months, and the prospects of a professional investor doing what I'm having to do now (simply forming a view on an ambiguous situation) is low. By not resolving it now, it creates a potential leverage point for you in the future.

It is not just about the domain and information issues, you make claims that you own valuable IP, Steve, that is being used by the target but you won't specify what it is, just that it is valuable and the arrangement is undocumented. It just creates a fog of uncertainty and ambiguity, and adds to the challenges we already gave around tariffs, an industry in decline, etc.

I think it's best if I focus on the investment this month, and stabilising the business, and then once that's done, we can pick up the collaborative discussions again if it's still appropriate. Meantime, I'd request you take down the willswing.com website and Instagram account, to reduce the market confusion that is prevailing currently. We have registered willswing.org (clearly a weaker domain but at least it's international) and our site will go live on that this week. We'll then migrate emails and other accounts across to that domain and in due course, retire .mx

Cheers, Al

On Mon, 3 Feb 2025, 07:06 Steven Pearson, <Steve@willswing.com> wrote:

> Hi Alistair,
>
> Thanks again for your continued interest in revitalizing Mexico. I appreciate your commitment to the company's future and share your desire to see it succeed.
>
> I'd like to clarify my position as follows:
>
> 1. I remain supportive of your efforts and am open to exploring ways I might contribute to Mexico's success through technical consulting, design work, and advisory services. These contributions would need to be structured independently of any IP considerations.
>
> 2. Regarding the IP: This is not available for transfer at this time. To avoid continued circular discussions that might distract from more pressing operational priorities, I propose we place a one-year moratorium on IP discussions, after which we could revisit the topic annually if desired.
>
> I agree with Chris's assessment that the immediate priorities should be stabilizing supply chains, optimizing costs, improving production efficiency, and addressing design challenges. These operational fundamentals are far more critical to Mexico's success than resolving legacy online assets.
>
> I'm available to discuss specific ways I might assist with these core business challenges, as there appear to be no impediments to moving forward on that front. This would allow

us to maintain positive momentum while setting aside the more complex IP discussions for a later date when circumstances might be more favorable.

Let's focus on giving Mexico the best chance by addressing the most pressing operational priorities first.

Steve

---

**From:** CHRIS WILLS <cwillsmd@gmail.com>
**Sent:** Sunday, February 2, 2025 9:33 AM
**To:** Alistair Jeffery <ajeffery66@gmail.com>
**Cc:** Steven Pearson <Steve@willswing.com>; Mike Meier <Mike@willswing.com>; Linda Meier <Linda@willswing.com>
**Subject:** Re: Steve's position on Wills Wing IP

I sure hope we can work something out.  I would really like for WillsWing to prosper.

It seems to me the most important and timely issues are getting supply, cost, production and design issues stabilized and on a positive trajectory.  The internet and legacy online stuff is way down the list in terms of priorities.  I would hate to see these issues stall or impede the pressing priorities.

It would seem most beneficial to get Steve working on what he does best, and there does not seem to be any issues or roadblocks on getting this going.  I have not heard any issues with proceeding on that.

If we can't resolve the internet issues to everybody's satisfaction, then this can surely wait until a time when everybody is comfortable with the situation at that time.  The issue can then be addressed again at that later time.

I hope we can things cordial and positive and move forward in a collaborative way.

Let's give WillsWing the best chance to survive and prosper!

3

Chris

Sent from my iPad

> On Feb 1, 2025, at 1:57 PM, Alistair Jeffery <ajeffery66@gmail.com> wrote:

> Morning Steve, I hope you're well. Do you have any further thoughts on my email or the situation more generally? I'm keen to make some progress as we're due to start documenting the investment shortly, and it'd be good to reach a landing on the open points.

> To recap, I would be delighted if you were keen to be involved in the business going forward, as an advisor, shareholder and potentially Director. This would involve working with Rudy and I and newly recruited design professionals to upgrade the product range, and then continue to push innovation through the line-up at regular intervals. Your input into the quality control regime, testing and procurement would also be valuable.

> The offer is market engagement terms, 4% equity (2/3rds of the legacy stakeholder pot, the balance being offered to Chris), and hopefully a long term relationship with the business going forward. To tidy up the existing ambiguous situation, the quid pro quo would be assignment of the domain name, designs, branding etc to the US holding company of which you'd be a shareholder, with the privacy and information and account access protections I've outlined.

> As I've noted, my interest in Wills Wing is not predicated on you accepting this proposal. I intend to push ahead with the investment and partner with Rudy and try to make a go of it regardless, and we'll just have to cope with any additional headwind that arises if you do not agree to join us. I'll effectively be stepping into Leonides and Filippo's shoes, but hopefully I'll bring more experience and energy to the table. There is no additional money or equity available to pay you more, I think the terms of the offer are fair for a non-executive advisory role.

4

Give it some thought, let me know what you think.


Cheers, Al




On Wed, 22 Jan 2025 at 19:24, Alistair Jeffery <ajeffery66@gmail.com> wrote:

Thanks for this Steve, I guess I was premature in concluding we had reached a landing at our meeting, subject to agreeing a legal protocol. Rutan & Tucker remain unresponsive by the way, so I'll cast the net wider!

To help me frame my response to your email, can you please address the following questions:

1.  In the absence of a corporate vehicle, are you asserting your claim to ownership of Wills Wing IP personally, or are you acting on behalf of (any of) yourself, Mike & Linda, and Chris jointly?
2.  If personally, was the IP always held by you, or was it transferred from the Sport Kites, Inc when it was dissolved or at some earlier date? If transferred, what consideration was paid for it, if any. You note that in our call, we agreed that the product designs are effectively in the public domain and open-source. Other than the domain name (of which you are the registrant), can you specify the IP more precisely that you purport to hold that is valued, in your eyes, at $1m or more?
3.  Would you agree that $600,000 new capital has been raised from four Mexican investors on the basis of representations you have made regarding Wills Wing Mexico's unfettered ability to continue to make Wills Wing gliders. Was the scope of the usage of IP, designs, purchased equipment, stock, materials etc ever limited by you (term, scope etc) by contract, or in exchange of emails or discussions, on which you are now seeking to rely?
4.  Are you asserting that Wills Wing Mexico is currently using any IP that you purport to own unlawfully and if so, can you please identify what that IP is and the basis of the alleged breach(es) and whether any damage is being incurred by you or your colleagues and if so, the approximate quantum, and any steps you have taken to notify Wills Wing Mexico of the breach to allow them to mitigate.
5.  Are the gliders you are presenting on the willswing.com website and **willswing** Instagram page ones that you are currently making personally, or are intending to make, or are you marketing them on

behalf of Wills Wing Mexico or some other manufacturer and if so, on what basis? Are you interacting with prospective customers on these sites that you control and if so, how are you representing your position relative to WIlls Wing Mexico? Or are you concerned that they are passing off your products on their sites and if so, have you raised this concern? Or are you passing off their products as your own?

Many thanks in advance for addressing these queries, I look forward to hearing from you.

Cheers, Al

On Wed, 22 Jan 2025 at 01:35, Steven Pearson <Steve@willswing.com> wrote:

Hi Alistair,

It seems we are at an impasse by exclusively focusing on technical issues of migration. While that is important, it's subsidiary to other issues.

We left the last conversation with a comment from Chris, "If Alistair and Steve can work out some agreement that they're both comfortable with on the IP stuff."  And a request from Alistair, "if you could write just a brief description of what it is that you're looking for, a structure to wrap around to, and, and deliver to you in a way that you're happy just so that we're clear on." I agreed with that.

I asked Claude, ChatGPT, Gemini, Llama 3.2, Mistral and Perplexity variations of the question, "If a domain name is sold, identify and explain all legal and technical constraints that can be applied to guarantee persistent and unconditional control of individual email addresses associated with the domain name. Explore all alternatives, recommendations and concerns. Identify the risks and costs of assuring long term and durable control through ownership transfers and dissolution".  The answers were consistent—although it's possible, it will be complicated, expensive, require ongoing oversight, and not recommended.

My takeaway from this is that maintaining our email addresses is not worth the trouble beyond a transition period.

The other issue is the value of IP, as it's largely at the discretion of the owner but perhaps to some degree associated with fair market assessments.

We never discussed the sale of Wills Wing IP with Mexico shareholders. The invoice from Wills Wing to Mexico clearly specified all details of the sale of raw materials, and Mexico only paid 65% of the total.

Wills Wing declined more lucrative opportunities for the sale of IP because the intrinsic value of the Wills Wing was not worth risking on a new venture with a small likelihood of succeeding and thereby jeopardizing our legacy of achievements and contributions to hang gliding.

Filippo's accountant and attorney initiated the subject of ownership of Wills Wing IP in November 2021. Subsequently, the stockholders absent Steve made acquiring Wills Wing IP a high priority and designated Filippo to negotiate the purchase from me. Filippo offered me a $100/glider licensing royalty, acknowledging that the true value was higher but that's what they could afford. I consistently declined the proposal for a multitude of reasons, including, "I do not own it, you can't afford it, it is not essential for Mexico's future", and other legal-structural constrains. Considering that Filippo was pushing for my agreement and transferring the domain name and media assets, which have been under my control, if I had agreed and structured the agreement as a non-compete contract, I would have collected 60K+ in royalties at the offered rate for 2022-2024.

The value of Wills Wing IP at 2021 year-end, based on any metric of price to book, price to earnings, price to sales, price to goodwill and technical expertise was at least 4 times the value of Mexico today. Using a reference of your buyout of Filippo and Leonides at 250K for roughly 50% of Mexico puts the value of Wills Wing 2021 at 2M. Similarly, the value of Wills Wing in 2021 was at least twice as much as Moyes, Icaro, or Aeros.

It should be clear that Mexico's purchase of 100K for 350K of current inventory alone was already an extraordinarily generous contribution to the future of Mexico. But Wills Wing also granted Mexico license-free use product designs, engineering and trademarks for their use (but not for resale). I also negotiated agreements from Polyant, Aviatube and other suppliers to continue supporting Mexico, in many cases with the expectation that I was still involved. Mexico is still using proprietary

7

tooling from several suppliers that was owned by Wills Wing and would cost 1000s to replace. Further, Mexico did not pay me for the design and setup of their facilities, the training of staff, and operations management, full-time from September to December 2021, then continuing with direct support to Wolfi who was the production manager through Aug 2022. The value of these services, based on my salary, contract rates, or the relative compensation to others in this period is well over 75K. Finally, 100K wouldn't even cover the 40-year-old stock purchases that allowed Mike, Linda, Rob and me to acquire 51% of Wills Wing when it was worth far less than today.

By any measure, the residual value of Wills Wing IP today is still more than Mexico. Mexico has not produced any new in products or services. The content of their website, including manuals and service information, is copied from Willswing.com, and without any attribution or acknowledgment for the origin of almost everything they do.

By contrast, Wills Wing innovations are (by a wide margin) the most dominant, widely adopted, integral and essential technologies to almost every modern hang glider.

Notably, there remains an untapped goldmine of residual value in the archive of products that Wills Wing developed and prototyped, from glider configurations to harnesses and related products. The institutional knowledge of HG technology is vanishing in sync with the age of the innovators. It's already 80% gone, and the youngest engineer with any meaningful experience is over 50 years old, which makes this knowledge even more essential. There is no other talent available anywhere in HG today to reinvent or even implement what's already been done.

Whatever correspondence you may have read from Jessica implying that Wills Wing IP was gifted or sold to Mexico is incomplete and out of context. Jessica's participation was limited to taking notes at directors' meetings for a few months and she was only party to a small fraction of the discussion and efforts to develop Mexico. The directors' meetings tended toward grandiose and aspirational goals rather than the more sobering tasks at hand. I granted Jessica, Wolfi and Monica editorial access to the WW website and social media accounts to support the Mexico transition but never considered sharing administrative control with anyone other than Mike. Jessica added a Mexico contact address on the website and a made several social media posts—nothing tangible and not more than 1% of Wolfi's contributions.

8

The outstanding question is how these factors affect the residual fair value of Wills Wing IP today.

We have already agreed that the product designs are effectively in the public domain and open-source. What remains is domain ownership, social media accounts, trademarks, non-compete agreements, ongoing technical support, product development and other consulting services

Importantly, the conditions that stopped us from selling IP in 2021 – that is, confidence in an outcome and legacy consistent with our achievements over the last 50 years and a fair valuation—have only declined. Mexico is far short of Wills Wing standards, including customer service and the quality and airworthiness of production gliders.

The following pre-conditions must be met before I would consider any transfer of WW IP:

1. Explicit agreement by all parties that the purchase of WW assets by Mexico never included ownership of the willswing.com domain, social media assets or other unspecified IP and trademarks.

2. An independent evaluation of outstanding IP value or establishment of a mutually agreed standard measure of company value.

3. An unconditional guarantee of unrestricted rights to discuss and share, in any manner, the history and details of all events, products, correspondence and other details associated with Wills Wing through the closing of Sport Kites, Inc. in 2024.

Mike and I also concur regarding the additional constraint of not selling anything that could be considered property of Sport Kites, Inc. This further constrains the path for acquiring the willswing.com domain and social media accounts, making a near-term agreement difficult to envision.

Upon reconsideration of the past 3-1/2 years, I think releasing the IP at anything less than a company valuation of 1M would have been inadvisable. While I acknowledge that value has declined, it remains substantial. The current proposal has renewed expectations for Mexico's future, which I support, but not at the expense of more unrecognized and uncompensated contributions. Alternative paths forward exist without the Wills Wing IP, with domains like willswing.aero, or negotiating for other established brands like Moyes, Icaro, Aeros, Finsterwalder, NorthWing, Bautek, Avian, Airborne, among others.

9

Agreement on a longer term seems more feasible, particularly after collaborative progress to address our mutual concerns and aspirations. Mike has shown flexibility in certain details, and similar accommodation may be possible with me as well in time.

Sincerely,

Steve

--

———————————

Alistair Jeffery
Mobile / Whatsapp (IT): +39 331 442 0360

Mobile (UK): +44 7500 839 400

--

———————————

Alistair Jeffery
Mobile / Whatsapp (IT): +39 331 442 0360

Mobile (UK): +44 7500 839 400



# Exhibit L

## ABOUT US



00:00 ▶ ━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━ 00:29 🔊 ⛶

Founded in 1973, Wills Wing has cemented its legacy as a cornerstone of the hang gliding community. The business was established by Bob and Chris Wills in Orange, California, and quickly grew to become the worlds leading manufacturer of hang gliders, pioneering a number of the design features that pilots today take for granted. Sadly, Bob, a highly regarded pilot and visionary, was killed filming a Jeep commercial when caught in the downwash of a filming helicopter. Chris left the business to pursue a medical career, and ownership of the company passed to Mike & Linda Meiers, Rob Kells and Steve Pearson, who ran the business successfully for many years.

In 2021, manufacturing was transferred to Valle de Bravo in Mexico, home to one of the worlds most famous flying sites, and management was passed to well known competition pilot, Rudy Gotés. Valle de Bravo boasts over 300 flyable days per year in near perfect conditions for testing and refining glider design, supported by a deep community of sports aviation enthusiasts. In 2025, the business raised further expansion capital and set its sights on expanding its international presence, whilst continuing to innovate its core glider designs.



1800 West Loop South – Suite 1600 – Houston, TX 77027, USA,

| HANG Gliders | SUPPORT | LEGAL & INFO | CONTACT |
| --- | --- | --- | --- |
| Alpha | Gliders Manuals | About Us | telephone |
| Falcon 4 | Tech Bulletins | Dealers | e-mail |
| Sport 3 | Wills Wing Control Bars | Contact | facebook |
| U2 | Spare parts list | Join the Team | instagram |
| T3 | Wires application | Disclaimer | youtube |
| Falcon 4 Tandem | Login | Terms of use | |
| Glider Builder | | Privacy policy | |

</dupla.mx>

# Exhibit M

| | |
|---|---|
| **From:** | Abner Palma <abner@willswing.com.mx> |
| **To:** | Steven Pearson <Steve@willswing.com> |
| **Date:** | 2025-05-08 10:56 |
| **Subject:** | New request Drawing GitHub |

Hello Mr. Pearson,
Hope you are well, could you please upload the drawing of the items 20G-1616, 15J-3036 and 15J-3043 to GitHub?
Thank you, Best regards.

Abner Palma
(+52) 55 6508 9642
willswing.com.mx

---

| | |
|---|---|
| **From:** | Steven Pearson <Steve@willswing.com> |
| **To:** | Abner Palma <abner@willswing.com.mx> |
| **Date:** | 2025-05-09 10:18 |
| **Subject:** | Re: New request Drawing GitHub |

Updated just now

---

| | |
|---|---|
| **From:** | Abner Palma <abner@willswing.com.mx> |
| **To:** | Steven Pearson <Steve@willswing.com> |
| **Date:** | 2025-05-15 12:34 |
| **Subject:** | Re: New request Drawing GitHub |

Hello Mr. Pearson,
Thank you, could you please add the 20g-2482?
Regards.

Abner Palma
(+52) 55 6508 9642
willswing.com.mx

(prior message: Steven Pearson 2025-05-09 10:18 — "Updated just now")

---

| | |
|---|---|
| **From:** | Abner Palma <abner@willswing.com.mx> |
| **To:** | Steven Pearson <Steve@willswing.com> |
| **Date:** | 2025-05-20 10:09 |
| **Subject:** | Re: New request Drawing GitHub |

Hello Mr. Pearson,

Could you please add the 20G-2833 too? Thank you so much,

Abner Palma

(+52) 55 6508 9642

willswing.com.mx

(prior messages in thread: Abner 2025-05-15 12:34 + Steve 2025-05-09 10:18 + Abner 2025-05-08 10:56)

---

| | |
|---|---|
| **From:** | Steven Pearson <Steve@willswing.com> |
| **To:** | Abner Palma <abner@willswing.com.mx> |
| **Date:** | 2025-05-20 13:58 |
| **Subject:** | Re: New request Drawing GitHub |

Hi Abner, I posted the files that you requested

# Exhibit N

# Wills Wing: Difference between revisions

Visual Wikitext    Inline ⊙

**Revision as of 08:11, 8 February 2025 (edit)**
Ajeffery (talk | contribs)
m *(Sport 3 image updated for more contemporary shot)*
*(Tag: Visual edit)*
← Previous edit

**Revision as of 03:32, 9 February 2025 (edit) (undo)**
Ajeffery (talk | contribs)
m *(Updated summary information panel to include employee size, previous name and international url (willswing.org))*
*(Tag: Visual edit)*
Next edit →

**Line 10:**

| traded_as =
| fate =
− | predecessor =
| successor =
| foundation = 1973

**Line 10:**

| traded_as =
| fate =
+ | predecessor = **Sport Kites, Inc**
| successor =
| foundation = 1973

**Line 29:**

| equity =
| owner =
− | num_employees =
| parent =
| divisions =
| subsid =
− | homepage = {{URL|www.willswing.~~com~~}}

**Line 29:**

| equity =
| owner =
+ | num_employees = **10+**
| parent =
| divisions =
| subsid =
+ | homepage = {{URL|www.willswing.**org**}}

| footnotes =

| intl =

| footnotes =

| intl =

# Revision as of 03:32, 9 February 2025

**Wills Wing, Inc** is an aircraft manufacturer originally based in Orange, California. The company specializes in the design and manufacture of hang gliders in the form of ready-to-fly aircraft, plus hang glider harnesses and accessories.[1][2]

The company was founded in 1973 by brothers Bob and Chris Wills.[3]

The company sells a line of hang gliders including training and beginner gliders, intermediate and competition wings.[2]

# History

The company was formed as Sport Kites, Inc in 1973 and started doing business under the name *Wills Wing* in 1978.[4][3]

In 1973 Chris Wills took first place and Bob Wills won second place in the first US National Hang Gliding Championships. The next year Bob Wills won first place and Chris Wills took second place at the second US Nationals.[4][3]

Chris and Bob Wills' brother, Eric Wills, was killed in a hang gliding accident in 1974.[5][6]

Chris Wills left the company in 1976 to attend medical school and pursue a career as a physician. Bob Wills was killed in a hang gliding accident while making a Jeep commercial on 24 June 1977. The majority ownership of the company was then sold to Rob Kells, Linda and Mike Meier and Steve Pearson.

By 1984 the company had become the largest hang glider manufacturer in North America and then later in the world.[4][3]

Kells died of prostate cancer in 2008.[3][7]

A Wills Wing XC-185 hang glider is on display at the Canada Aviation and Space Museum, in Ottawa, while another Wills Wing glider is in the US Southwest Soaring Museum in Moriarty, New Mexico.[4][8]

**Wills Wing, Inc.**

| | |
|---|---|
| **Company type** | Privately held company |
| **Industry** | Aerospace |
| **Predecessor** | Sport Kites, Inc |
| **Founded** | 1973 |
| **Founder** | Chris Wills, Bob Wills |
| **Headquarters** | Orange, California, United States |
| **Key people** | Rudy Gotes and Steve Pearson |
| **Products** | Hang gliders, hang glider harnesses |
| **Number of employees** | 10+ |
| **Website** | www.willswing.org (http://www.willswing.org) |

In 2012 Wills Wing Team Pilot Dustin Martin set a new world record for Cross Country Open Distance in a Hang Glider of 475 miles flying a Wills Wing T2C 144.[9]

# Opening of the new Production Facility in Valle de Bravo, Mexico



Wills Wing Sport 3 recreational and sports competition hang glider

In June, 2021 Wills Wing announced that they would be winding down operations at their Orange facility with a successor entity to be formed in Valle de Bravo, Mexico.[10] Valle de Bravo is home to one of the most consistent flying sites in the world, and there is a strong local community of hang gliding pilots. By the end of the year, gliders produced from the new facility were being test flown, and in the following year, shipments were re-established to Wills Wing's network of distributors and dealers[11].

# Aircraft

List of aircraft built by Wills Wing:

**Hang gliders**
**Current Production**

- Wills Wing Alpha
- Wills Wing Falcon
- Wills Wing Sport 3
- Wills Wing U2/U2C
- Wills Wing T2/T2C

**Out of Production**

- Wills Wing Alpha(Original)
- Wills Wing Attack Duck
- Wills Wing Condor
- Wills Wing Duck
- Wills Wing Fusion
- Wills Wing Harrier
- Wills Wing HP
- Wills Wing HP AT
- Wills Wing Omega

Wills Wing XC-185 on display in the Canada Aviation and Space Museum

- Wills Wing Omni
- Wills Wing RamAir
- Wills Wing Raven
- Wills Wing Skyhawk
- Wills Wing Spectrum
- Wills Wing Sport
- Wills Wing Sport American
- Wills Wing Sport AT
- Wills Wing Sport 2
- Wills Wing SST
- Wills Wing Super Sport
- Wills Wing Talon
- Wills Wing Ultra Sport
- Wills Wing XC
- Wills Wing Eagle

**Paragliders**

- Wills Wing AT 123
- Wills Wing AT 223



Wills Wing Falcon 4 being test flown by Steve Pearson



Wills Wing test pilot Ken Howells flies a Wills Wing U2C 160

# References

1. "California Secretary of State Business Search - Sport Kites, Inc" (https://bizfileonline.sos.ca.gov/search/business). *California Secretary of State - Business Search*. 3 February 2025.
2. Bertrand, Noel; Rene Coulon; et al: *World Directory of Leisure Aviation 2003-04*, page 47. Pagefast Ltd, Lancaster UK, 2003. ISSN 1368-485X (https://search.worldcat.org/issn/1368-485X)
3. Mike Meier. "A Brief History of Hang Gliding, Paragliding and Wills Wing" (https://www.willswing.com/a-brief-history-of-hang-gliding-paragliding-and-wills-wing/). *Wills Wing*. Retrieved 9 March 2016.
4. "Wills Wing XC-185 - Canada Aviation and Space Museum" (http://casmuseum.techno-science.ca/en/collection-research/artifact-wills-wing-xc-185.php). *techno-science.ca*. Retrieved 9 March 2016.
5. Wills, Maralys and Chris Wills (1992), *Wings Like Eagles*, Longstreet Press, Marietta, Georgia, United States. ISBN 1-56352-025-7
6. "Soaring Above the Tragedy : Santa Ana Author Who Lost 2 Children in Hang-Gliding Accidents Recounts Her Family's Disasters and Triumphs" (https://www.latimes.com/archives/la-xpm-1992-05-29-vw-424-story.html). *LA Times*. Retrieved 9 March 2016.
7. "Wills Wing, Inc. - Rob Kells, In Memoriam" (https://web.archive.org/web/20150326162750/https://www.willswing.com/flystrong.asp). *willswing.com*. Archived from the original (https://www.willswing.com/flystrong.asp) on 26 March 2015. Retrieved 9 March 2016.



Wills Wing AT 123 paraglider

8. US Southwest Soaring Museum (2010). "Sailplanes, Hang Gliders & Motor Gliders" (http://swsoaringmuseum.org/collection.htm). Retrieved 9 March 2016.
9. Sulzberger, A. G. (12 January 2013). "Two Men. One Sky. The Silent Realization of a Purer Form of Flight" (https://www.nytimes.com/2013/01/13/sports/two-men-one-sky-the-silent-realization-of-a-purer-form-of-flight.html). *The New York Times*. Retrieved 21 June 2018.
10. Steven Pearson, Mike and Linda Meier, Chris Wills (8 June 2021). "The Future of Wills Wing" (https://www.willswing.com/the-future-of-wills-wing/). *Wills Wing*. Retrieved 8 June 2021.
11. "Guide to Valle de Bravo, Mexico" (https://xcmag.com/travel-guide/guide-to-valle-de-bravo-mexico/). *Cross Country Magazine* (February, 2021). 18 February 2021.



Wills Wing Eagle hang glider

# External links

- Official website (https://www.willswing.com/)

Retrieved from "https://en.wikipedia.org/w/index.php?title=Wills_Wing&oldid=1274766650"



**WIKIPEDIA**
25 years of the free encyclopedia

# Wills Wing: Difference between revisions

 Inline

**Revision as of 00:06, 21 February 2025 (edit)**
Adakiko (talk | contribs)
(→History: cn on physician & deaths paragraph, rm wp:overlink)
← Previous edit

**Revision as of 08:58, 25 May 2025 (edit) (undo)**
Ajeffery (talk | contribs)
(Tag: Visual edit: Switched)
Next edit →

**Line 3:**

```
{{Use American English|date=January 2022}}
```

```
{{Infobox company
```

− `| name = Wills Wing, Inc.`

```
| logo = Wills Wing Logo.png
```

```
| logo_size = 250px
```

**Line 3:**

```
{{Use American English|date=January 2022}}
```

```
{{Infobox company
```

+ `| name = Wills Wing Holding, Inc.`

```
| logo = Wills Wing Logo.png
```

```
| logo_size = 250px
```

**Line 10:**

```
| traded_as =
```

```
| fate =
```

− `| predecessor = Sport Kites, Inc`

```
| successor =
```

```
| foundation = 1973
```

**Line 10:**

```
| traded_as =
```

```
| fate =
```

+ `| predecessor = Sport Kites, Inc, Wills Wing, Inc`

```
| successor =
```

```
| foundation = 1973
```

**Line 16:**

```
| defunct = <!-- {{End date|YYYY|MM|DD}} -->
```

```
| hq_location =
```

− `| hq_location_city = [[Orange, California]]`

```
| hq_location_country = [[United States]]
```

```
| area_served =
```

**Line 16:**

```
| defunct = <!-- {{End date|YYYY|MM|DD}} -->
```

```
| hq_location =
```

+ `| hq_location_city = [[Houston, Texas]]`

```
| hq_location_country = [[United States]]
```

```
| area_served =
```

− `| key_people = Rudy Gotes and Steve Pearson`

+ `| key_people = Alistair Jeffery, Rudy Gotes`

`| industry = [[Aerospace]]`

`| industry = [[Aerospace]]`

`| products = [[Hang glider]]s, hang glider harnesses`

`| products = [[Hang glider]]s, hang glider harnesses`

**Line 33:**

**Line 33:**

`| divisions =`

`| divisions =`

`| subsid =`

`| subsid =`

− `| homepage = {{URL|www.willswing.com}}`

+ `| homepage = {{URL|www.willswing.org}}`

`| footnotes =`

`| footnotes =`

`| intl =`

`| intl =`

**Line 64:**

**Line 64:**

`== Opening of the new Production Facility in Valle de Bravo, Mexico ==`

`== Opening of the new Production Facility in Valle de Bravo, Mexico ==`

− `In June, 2021 Wills Wing announced that they would be winding down operations at their Orange facility with a successor entity to be formed in [[Valle de Bravo]], Mexico.<ref>{{cite web |author=Steven Pearson, Mike and Linda Meier, Chris Wills |date=8 June 2021 |title=The Future of Wills Wing |url=https://www.willswing.com/the-future-of-wills-wing/ |url-status=live |accessdate=8 June 2021 |website=Wills Wing}}</ref> Valle de Bravo is home to one of the most consistent flying sites in the world, and there is a strong local community of hang gliding pilots. By the end of the year, gliders produced from the new facility were being test flown, and in the following year, shipments were re-established to Wills Wing's network of distributors and dealers.<ref>{{Cite journal |date=18 February 2021 |title=Guide to Valle de Bravo, Mexico |url=https://xcmag.com/travel-guide/guide-to-valle-de-bravo-mexico/ |journal=Cross Country Magazine |issue=February, 2021}}</ref> By the end of 2024, more than 500 new gliders had been manufactured at the Valle de Bravo facility.<ref>{{Cite journal |date=December 2024 |title=Wills Wing update |journal=Skywings - the magazine of the British Hang Gliding and Paragliding Association, December 2024 |issue=428 |pages=7}}</ref>`

+ `In June, 2021 Wills Wing announced that they would be winding down operations at their Orange facility with a successor entity to be formed in [[Valle de Bravo]], Mexico.<ref>{{cite web |author=Steven Pearson, Mike and Linda Meier, Chris Wills |date=8 June 2021 |title=The Future of Wills Wing |url=https://www.willswing.com/the-future-of-wills-wing/ |url-status=live |accessdate=8 June 2021 |website=Wills Wing}}</ref> Valle de Bravo is home to one of the most consistent flying sites in the world, and there is a strong local community of hang gliding pilots. By the end of the year, gliders produced from the new facility were being test flown, and in the following year, shipments were re-established to Wills Wing's network of distributors and dealers.<ref>{{Cite journal |date=18 February 2021 |title=Guide to Valle de Bravo, Mexico |url=https://xcmag.com/travel-guide/guide-to-valle-de-bravo-mexico/ |journal=Cross Country Magazine |issue=February, 2021}}</ref> By the end of 2024, more than 500 new gliders had been manufactured at the Valle de Bravo facility.<ref>{{Cite journal |date=December 2024 |title=Wills Wing update |journal=Skywings - the magazine of the British Hang Gliding and Paragliding Association, December 2024 |issue=428 |pages=7}}</ref>`

+ `In June, 2025, the business announced an investment led by Italian based investor, Alistair Jeffery. Mr Jeffery joins Rudy and Jose Gotes and Chris Wills as major shareholders of the business<ref>{{cite web |author=Alistair`

```
Jeffery |date=24 May 2025 |title=Sports aviation pioneer, Wills Wing,
announces major investment |url=https://willswing.org/news/sports-aviation-
pioneer-wills-wing-announces-major-investment/ |url-status=live
|accessdate=24 May 2025 |website=Wills Wing}}</ref>.
```

== Aircraft ==

== Aircraft ==

---

# Revision as of 08:58, 25 May 2025

**Wills Wing, Inc** is an aircraft manufacturer originally based in Orange, California. The company specializes in the design and manufacture of hang gliders in the form of ready-to-fly aircraft, plus hang glider harnesses and accessories.[1][2]

The company was founded in 1973 by brothers Bob and Chris Wills.[3]

The company sells a line of hang gliders including training and beginner gliders, intermediate and competition wings.[2]

## History

The company was formed as Sport Kites, Inc in 1973 and started doing business under the name *Wills Wing* in 1978.[4][3]

In 1973 Chris Wills took first place and Bob Wills won second place in the first US National Hang Gliding Championships. The next year Bob Wills won first place and Chris Wills took second place at the second US Nationals.[4][3]

Chris and Bob Wills' brother, Eric Wills, was killed in a hang gliding accident in 1974.[5][6]

Chris Wills left the company in 1976 to attend medical school and pursue a career as a physician. Bob Wills was killed in a hang gliding accident while making a Jeep commercial on 24 June 1977. The majority ownership of the company was then sold to Rob Kells, Linda and Mike Meier and Steve Pearson.

By 1984 the company had become the largest hang glider manufacturer in North America and then later in the world.[4][3]

Kells died of prostate cancer in 2008.[3][7]

A Wills Wing XC-185 hang glider is on display at the Canada Aviation and Space Museum, in Ottawa, while another Wills Wing glider is in the US Southwest Soaring Museum in Moriarty, New Mexico.[4][8]

In 2012 Wills Wing Team Pilot Dustin Martin set a new world record for Cross Country Open Distance in a Hang Glider of 475 miles flying a Wills Wing T2C 144.[9]

| Wills Wing Holding, Inc. | |
|---|---|
| | It's All About the Flying - Hang Gliding Equipment Since 1973 |
| **Company type** | Privately held company |
| **Industry** | Aerospace |
| **Predecessor** | Sport Kites, Inc, Wills Wing, Inc |
| **Founded** | 1973 |
| **Founder** | Chris Wills, Bob Wills |
| **Headquarters** | Houston, Texas, United States |
| **Key people** | Alistair Jeffery, Rudy Gotes |
| **Products** | Hang gliders, hang glider harnesses |
| **Number of employees** | 10+ |
| **Website** | www.willswing.org (http://www.willswing.org) |

## Opening of the new Production Facility in Valle de Bravo, Mexico

In June, 2021 Wills Wing announced that they would be winding down operations at their Orange facility with a successor entity to be formed in Valle de Bravo, Mexico.[10] Valle de Bravo is home to one of the most consistent flying sites in the world, and there is a strong local community of hang gliding pilots. By the end of the year, gliders produced from the new facility were being test flown, and in the following year, shipments were re-established to Wills Wing's network of distributors and dealers.[11] By the end of 2024, more than 500 new gliders had been manufactured at the Valle de Bravo facility.[12]

In June, 2025, the business announced an investment led by Italian based investor, Alistair Jeffery. Mr Jeffery joins Rudy and Jose Gotes and Chris Wills as major shareholders of the business[13].

## Aircraft

List of aircraft built by Wills Wing:

**Hang gliders**
**Current Production**

- Wills Wing Alpha
- Wills Wing Falcon
- Wills Wing Sport 3
- Wills Wing U2/U2C
- Wills Wing T2/T2C

**Out of Production**

- Wills Wing Alpha(Original)
- Wills Wing Attack Duck
- Wills Wing Condor
- Wills Wing Duck
- Wills Wing Fusion
- Wills Wing Harrier
- Wills Wing HP
- Wills Wing HP AT
- Wills Wing Omega
- Wills Wing Omni
- Wills Wing RamAir
- Wills Wing Raven
- Wills Wing Skyhawk
- Wills Wing Spectrum
- Wills Wing Sport
- Wills Wing Sport American


Wills Wing Sport 3 recreational and sports competition hang glider


Wills Wing XC-185 on display in the Canada Aviation and Space Museum

Wills Wing Falcon 4 being test flown by Steve Pearson

Case 8:26-cv-01514    Document 1    Filed 06/12/26    Page 84 of 103    Page ID #:84

- Wills Wing Sport AT
- Wills Wing Sport 2
- Wills Wing SST
- Wills Wing Super Sport
- Wills Wing Talon
- Wills Wing Ultra Sport
- Wills Wing XC
- Wills Wing Eagle

**Paragliders**

- Wills Wing AT 123
- Wills Wing AT 223


Wills Wing T3 hang glider

# References

1. "California Secretary of State Business Search - Sport Kites, Inc" (https://bizfileonline.sos.ca.gov/search/business). *California Secretary of State - Business Search*. 3 February 2025.

2. Bertrand, Noel; Rene Coulon; et al: *World Directory of Leisure Aviation 2003-04*, page 47. Pagefast Ltd, Lancaster UK, 2003. ISSN 1368-485X (https://search.worldcat.org/issn/1368-485X)

3. Mike Meier. "A Brief History of Hang Gliding, Paragliding and Wills Wing" (https://www.willswing.com/a-brief-history-of-hang-gliding-paragliding-and-wills-wing/). *Wills Wing*. Retrieved 9 March 2016.

4. "Wills Wing XC-185 - Canada Aviation and Space Museum" (http://casmuseum.techno-science.ca/en/collection-research/artifact-wills-wing-xc-185.php). *techno-science.ca*. Retrieved 9 March 2016.

5. Wills, Maralys and Chris Wills (1992), *Wings Like Eagles*, Longstreet Press, Marietta, Georgia, United States. ISBN 1-56352-025-7

6. "Soaring Above the Tragedy : Santa Ana Author Who Lost 2 Children in Hang-Gliding Accidents Recounts Her Family's Disasters and Triumphs" (https://www.latimes.com/archives/la-xpm-1992-05-29-vw-424-story.html). *LA Times*. Retrieved 9 March 2016.

7. "Wills Wing, Inc. - Rob Kells, In Memoriam" (https://web.archive.org/web/20150326162750/https://www.willswing.com/flystrong.asp). *willswing.com*. Archived from the original (https://www.willswing.com/flystrong.asp) on 26 March 2015. Retrieved 9 March 2016.

8. US Southwest Soaring Museum (2010). "Sailplanes, Hang Gliders & Motor Gliders" (http://swsoaringmuseum.org/collection.htm). Retrieved 9 March 2016.

9. Sulzberger, A. G. (12 January 2013). "Two Men. One Sky. The Silent Realization of a Purer Form of Flight" (https://www.nytimes.com/2013/01/13/sports/two-men-one-sky-the-silent-realization-of-a-purer-form-of-flight.html). *The New York Times*. Retrieved 21 June 2018.

10. Steven Pearson, Mike and Linda Meier, Chris Wills (8 June 2021). "The Future of Wills Wing" (https://www.willswing.com/the-future-of-wills-wing/). *Wills Wing*. Retrieved 8 June 2021.

11. "Guide to Valle de Bravo, Mexico" (https://xcmag.com/travel-guide/guide-to-valle-de-bravo-mexico/). *Cross Country Magazine* (February, 2021). 18 February 2021.

12. "Wills Wing update". *Skywings - the magazine of the British Hang Gliding and Paragliding Association, December 2024* (428): 7. December 2024.

13. Alistair Jeffery (24 May 2025). "Sports aviation pioneer, Wills Wing, announces major investment" (https://willswing.org/news/sports-aviation-pioneer-wills-wing-announces-major-investment/). *Wills Wing*. Retrieved 24 May 2025.


Wills Wing AT 123 paraglider


Wills Wing Eagle hang glider

Case 8:26-cv-01514    Document 1    Filed 06/12/26    Page 85 of 103    Page ID #:85

## External links

- Official website (https://www.willswing.com/)

Retrieved from "https://en.wikipedia.org/w/index.php?title=Wills_Wing&oldid=1292120564"

# Exhibit O

An official website of the United States government   Here's how you know ⌄

Sign in

## Trademark search

Home  >  Search results  >  Details                                                    Help

**Please read**

**Use our new image search feature:** Log into your USPTO.gov account and select "Image search" from the drop-down or select the camera icon in the search box. Learn more on our Trademark search system updates page.

Wordmark          | wills wing                                              ✕   🔍

**Result 1 of 2,375** for wills wing

|< ‹ › >|          ← **Search results**          **Print/Save**

---

**Trademark**



**Wordmark**
WILLS WING

**Serial number**
99783048

**Registration number**
N/A

**Filing date**
2026-04-23

**Registration date**
N/A

**Status**
LIVE   PENDING

**Status date**
2026-04-23

**Registration type**
PRINCIPAL

**Case status**
New application awaiting assignment to an examining attorney. See current trademark processing wait times for more information.

**Publication date**
N/A

**Class**
012

**TM5 Status**



LIVE/APPLICATION/Awaiting Examination

Feedback

The trademark application has been accepted by the Office (has met the minimum filing requirements) and has not yet been assigned to an examiner.

## Goods and services

IC 012: Gliders and structural parts therefor. | **First Use Anywhere:** *December 31, 2021* | **First Use in Commerce:** *December 31, 2021*

## Current owner

### Name
Wills Wing Holdings, Inc.

### Address
1800 West Loop South, Suite 1600
Houston Texas 77027
United States

### Entity type
CORPORATION

### Organized
United States

### Ownership transitions
No assignments

## Mark information

### Mark literal element
WILLS WING

### Standard character claim
N/A

### Mark type
TRADEMARK

### Mark drawing code
(5) Stylized mark

### Description
Color is not claimed as a feature of the mark.

The mark consists of the words WILLS WING in a stylized format.

### Translation
N/A

### Transliteration
N/A

### Disclaimer
N/A

### Design codes

## Basis information

### Filed

Feedback

1(a)

**Currently**

1(a)

## Attorney information

**Name**

Stephen J. Stark

**Address**

Miller & Martin PLLC

Suite 1200

832 Georgia Avenue

Chattanooga Tennessee 37402

United States

**Primary email**

trademarknotices@millermartin.com

**Docket number**

35249-0002

## Correspondence information

**Name**

Stephen J. Stark

**Address**

Miller & Martin PLLC

Suite 1200

832 Georgia Avenue

Chattanooga Tennessee 37402

United States

**Email**

trademarknotices@millermartin.com

## Prosecution history and documents

Documents only

**Date** 2026-04-23

**Description** APPLICATION FILING RECEIPT MAILED

**Document**

**Proceeding**

**Date** 2026-04-23

**Description** NEW APPLICATION ENTERED

**Document**

**Proceeding**

Feedback

Items per page: 5     1_2_r 2     I<   <   >   >I

## Proceedings

N/A

## International registration (Section 66a)

N/A

## Foreign information

N/A

## Maintenance information

N/A

## Receive updates from the USPTO

Enter your email to subscribe or update your preferences

your@email.com                                                     Subscribe

About the USPTO   ·   Search for patents   ·   Search for trademarks

US Department of Commerce

Accessibility

Privacy Policy

Terms of Use

Financial and Performance Data

Freedom of Information Act

Inspector General

NoFEAR Act

USA.gov

Follow us

Feedback

 An official website of the United States government  Here's how you know ⌄

💡 **TM**   $   ?      Sign in

**Trademark search**

Home  >  Search results  >  Details                                      Help

**Please read**

ⓘ   **Use our new image search feature:** Log into your USPTO.gov account and select "Image search" from the drop-down or select the camera icon in the search box. Learn more on our Trademark search system updates page.

Wordmark   | wills wing                                        ✕  🔍 |

**Result 2 of 2,375** for wills wing

|< ‹ › >|        ← **Search results**        **Print/Save**

---

**Trademark**

# WILLS WING

**Wordmark**
WILLS WING

**Serial number**
99782198

**Registration number**
N/A

**Filing date**
2026-04-23

**Registration date**
N/A

**Status**
( LIVE ) ( PENDING )

**Status date**
2026-04-23

**Registration type**
PRINCIPAL

**Case status**
New application awaiting assignment to an examining attorney. See current trademark processing wait times for more information.

**Publication date**
N/A

**Class**
012

**TM5 Status**

Feedback



LIVE/APPLICATION/Awaiting Examination

The trademark application has been accepted by the Office (has met the minimum filing requirements) and has not yet been assigned to an examiner.

## Goods and services

IC 012: Gliders and structural parts therefor. | **First Use Anywhere:** *December 31, 2021* | **First Use in Commerce:** *December 31, 2021*

## Current owner

### Name
Wills Wing Holdings, Inc.

### Address
1800 West Loop South, Suite 1600
Houston Texas 77027
United States

### Entity type
CORPORATION

### Organized
United States

### Ownership transitions
No assignments

## Mark information

### Mark literal element
WILLS WING

### Standard character claim
Yes. The mark consists of standard characters without claim to any particular font style, size, or color.

### Mark type
TRADEMARK

### Mark drawing code
(4) Standard character drawing

### Description
N/A

### Translation
N/A

### Transliteration
N/A

### Disclaimer
N/A

### Design codes

Feedback

## Basis information

**Filed**
1(a)

**Currently**
1(a)

## Attorney information

**Name**
Stephen J. Stark

**Address**
Miller & Martin PLLC
Suite 1200
832 Georgia Avenue
Chattanooga Tennessee 37402
United States

**Primary email**
trademarknotices@millermartin.com

**Docket number**
35249-0002

## Correspondence information

**Name**
Stephen J. Stark

**Address**
Miller & Martin PLLC
Suite 1200
832 Georgia Avenue
Chattanooga Tennessee 37402
United States

**Email**
trademarknotices@millermartin.com

## Prosecution history and documents

Documents only

**Date** 2026-04-23

**Description** APPLICATION FILING RECEIPT MAILED

**Document**

**Proceeding**

**Date** 2026-04-23

**Description** NEW APPLICATION OFFICE SUPPLIED DATA ENTERED

Feedback

Document

Proceeding

**Date** 2026-04-23

Description NEW APPLICATION ENTERED

Document

Proceeding

Items per page: 5    1_a of a    I<    <    >    >I

## Proceedings

N/A

## International registration (Section 66a)

N/A

## Foreign information

N/A

## Maintenance information

N/A

## Receive updates from the USPTO

Enter your email to subscribe or update your preferences

your@email.com    Subscribe

About the USPTO    ·    Search for patents    ·    Search for trademarks

US Department of Commerce
Accessibility
Privacy Policy
Terms of Use
Financial and Performance Data
Freedom of Information Act
Inspector General
NoFEAR Act
USA.gov

Feedback

Follow us

Follow us

Feedback

# Exhibit P



**STEPHEN J. STARK**

Direct Dial 423-785-8229
Direct Fax 423-321-1568
stephen.stark@millermartin.com

April 30, 2026

**VIA EMAIL AND CERTIFIED MAIL** steve@willswing.com; mike@willswing.com; info@willswing.com

Steven Pearson                    Michael Meier
5845 East Lavender Crt,            13381 Bow Pl
Orange, CA 92867                   Santa Ana, CA 92705

Re:     Unauthorized Claims of Ownership and Use of Wills Wing Intellectual Property

Mr. Pearson and Mr. Meier:

This firm represents Wills Wing Holding, Inc. ("**Wills Wing**"). We believe Wills Wing to be the lawful owner of all intellectual property associated with the Wills Wing business, including without limitation its designs, technical documentation, manuals, CAD and engineering files, trade secrets, copyrights, the willswing.com domain name, trademarks, trade dress, and related goodwill ("**Wills Wing IP**").

It has come to our attention that you have: (a) publicly asserted personal ownership of the Wills Wing IP; (b) improperly retained administrative control of the domain willswing.com; and (c) published or facilitated the publication of Wills Wing IP through GitHub and possibly other online repositories. **We believe these actions are unauthorized and unlawful**. Your conduct gives rise to claims including, without limitation, likelihood of confusion and dilution under the Lanham Act, copyright infringement, misappropriation of trade secrets, and equitable claims barring your current assertions and activities.

If you contend that you possess legitimate ownership of any Wills Wing IP, we expect you will produce supporting documentation by May 7, 2026. Otherwise, we demand you remove the GitHub posting (and any others, should they exist) and point willswing.com to willswing.org until the ownership/administrator rights of willswing.com is transferred to our client.

We expect you will provide written confirmation by **May 7, 2026**, that you have fully complied with the above demands. All communications regarding this matter should be directed to me. Nothing in this letter constitutes a waiver of any rights or remedies, all of which are expressly reserved.

Sincerely,

Stephen J. Stark, Esq.

cc:     Al Jeffery (al.jeffery@willswing.org)

41213372v1

Volunteer Building Suite 1200
832 Georgia Avenue | Chattanooga, TN | 37402-2289
Office 423.756.6600 Fax 423.785.8480
millermartin.com

**ATLANTA**
**CHARLOTTE**
**CHATTANOOGA**
**NASHVILLE**

# Exhibit Q



  

# Wills Wing

13K followers • 11 following

🔗 Contact us    💬 Message    ➕ Follow

Manufacturing the highest quality hang gliders and hang gliding equipment since 1973.

🏷 Sports

**Wills Wing's Post**

**Wills Wing**
May 20 at 11:38 AM · 🌐

Hook in, Wills Wing family, here is the latest news and updates!

On the IP front

The GitHub site that was being used to publish our glider plans has been taken down, and the links to it from the unauthorized willswing.com site have come down with it. It's a step in the right direction. We've still got real ground to cover before this is fully resolved, and we're not popping any corks — but we wanted you to know that things are moving, and we're grateful for the support and loyalty so many of you have shown us.

On the workshop floor

A couple of weeks back we flagged the risk of a production pause due to the impact of the IP claims on the availability of expansion capital. Here's the current status: we've been able to maintain production throughout, and we're manufacturing and shipping gliders, while managing working capital carefully and keeping the build schedule tight. Quotes are being honored, orders are being processed, and gliders are continuing to go out the door from Valle de Bravo.

The take-down of the GitHub material has been a really positive step and has helped restore confidence to keep production moving. As the clouds clear on the IP front we'll be ready to ramp up quickly.

Gliders, in stock and ready to fly

We've got a strong line-up of showroom and demonstrator gliders sitting on the rack right now, ready to go out the door at great prices. Chat to your dealer or contact us directly and we'll do our best to cut a deal to get you into your dream wing.

Have a look at what's available: https://willswing.org/categoria-producto/en-stock/

If you want a custom glider, our current build time (from deposit paid to final assembly) is running at 12 days for Alpha, Falcon 4 and Sport 3 (including Race) — so if you order now, you'll be in the air well before the northern hemisphere summer season hits its stride.

US pilots — we've got you covered

We're holding a range of those stock gliders with our friends at Lookout Mountain in the US, freight and duties paid. To make life easy, we're covering the shipping cost for the final leg within mainland US. Pick your glider, we'll get it to you asap.
Merlin shortpack — first prototype is built
Our first Merlin short-pack prototype has been assembled and we're in shakedown mode. The engineering team is refining design features and exploring sail plans. More to come — and we think you're going to love where this one is heading.

Thanks for sticking with us, we appreciate the support.

Cheers, The Wills Wing team



**Sponsored**


The Time Has Come
gamefound.com


Win it for your country
game.ea.com

Wills Wing

Write a comment...

## Photos

See all photos



Privacy · Consumer Health Privacy · Terms · Advertising · Ad Choices ▷ · Cookies · More

**Wills Wing**
May 5 · 🌐

Wills Wing will pause production of all hang gliders from 15 May 2026. Here's why.

Back in August 2021, a public notice was posted by Steve Pearson and Mike and Linda Meiers on the legacy Wills Wing website announcing the wind-down of Wills Wing in California and the creation of a successor business to continue production and support from Mexico. That transition was presented publicly as a continuity plan — and it was supported by significant work, investment and capital by Rudy Gotés and his team to keep the Wills Wing brand, products and service alive.

In recent weeks, new material has been published on the willswing.com site, including an "Intellectual Property Notice". That notice asserts — in broad terms — that key Wills Wing intellectual property, including the Wills Wing name, logo and designs, is still owned personally by Steve and Mike, and that the Mexico operation is simply "authorised" to use the IP.

That "authorisation" is vague, and it creates major uncertainty about the IP foundation the current operating business relies on — the brand, the designs, the manuals, the parts, and the integrity of what is being built and supported.

In the same recent updates, a GitHub repository has also been linked from the legacy site which appears to publish extensive Wills Wing design / parts documentation as "open source". Whatever the intent, putting detailed plans and specifications of hang gliders into the public domain creates, in our opinion, a safety and integrity risk for the sport. We think it increases the likelihood of non-genuine Wills Wing parts entering circulation, and it risks encouraging "garage builds" or unapproved modifications to our gliders. Many pilots will remember the very high accident rates in the early days of the sport when home-building and inconsistent construction standards were commonplace.

Wills Wing requires ongoing capital support to run smoothly whilst we build out our strategy. It is not feasible to keep funding and operating normally while something as fundamental as the underlying IP position of our business is publicly challenged.

For that reason, we have made the reluctant decision to pause production in Valle de Bravo effective 15 May 2026 while we work urgently to resolve the uncertainty.

We will use our best endeavors to complete quotes made and orders received (both gliders and parts) prior to the 15th May. From that point onward, we will receive orders but we will not be able to commit when, or if, the glider will be built.

We understand how much this matters to pilots, dealers, schools, the team in Valle de Bravo and everyone who has supported Wills Wing for decades. We are intent on reaching a resolution that ensures there is only one Wills Wing, and that it continues to build high quality gliders and support the sport we love.

See links to relevant pages in comments. **See less**





238   78 comments   31 shares

👍 Like      💬 Comment      ↱ Share

View more comments



**Author**

**Wills Wing**
Posts made on the legacy [willswing.com] (http://willswing.com) site (this domain was not released as part of the succession plan)

https://web.archive.org/.../www.../the-future-of-wills-wing/ - 8 Jun, 2021... **See more**

4w   **Like**   Reply

View all 2 replies

Write a comment...